PACIFIC MUTUAL LIFE INSURANCE COMPANY v. WALKER.

Opinion delivered November 4, 1899.

1.  EVIDENCE—AGENT'S STATEMENT.—Where it is a question whether the acceptance by an insurer of an order drawn on insured's employer was payable out of his wages for a certain month or generally, evidence of a witness that he heard a man, having the same surname as the special agent of the insurer who countersigned the policy sued on, say that, if employees had no wages due out of which to pay such orders, his company held the orders until they did have money due, is inadmissible, because (1) it was not shown that the man who made the statement was the insurer's agent, and (2) if his identity were conceded, it was no shown that he had authorty to bind the insurer by such an admission. (Page 151.)

2.  INSTRUCTION—NOTICE OF NON-PAYMENT.—In an action on a policy of insurance, where the defense was that the policy stipulated that no claim should be payable unless the premiums were paid, and that plaintiff gave defendant an order on his employer payable out of his wages for June, when he had no wages due for that month, an instruction that if insured remained in his employer's service, and the insurer gave him no notice that the order was not paid, he could recover, notwithstanding its non-payment, is erroneous, since, if he had no funds with his employer at the time the order was due, he had no reason to suppose the order would be paid, and was not entitled to notice.  (Page 152.)

3.  SAME—ASSUMING UNDISPUTED FACTS.—In submitting to the jury the issues to be determined, the trial court should not request the jury to find as to matters conceded by both sides, but should confine their attention to those matters about which there is a dispute.    (Page 153.)

Appeal from Ashley Circuit Court.

MARCUS L. HAWKINS, Judge.

Thos. J. Walker, was, on the 22d day of February, 1896, engaged in the occupation of coal heaver for the Iron Mountain Railway Company, at Wilmot, Arkansas. On that day he procured from the agent of the Pacific Mutual Life Insurance Company an accident policy insuring him against violent and accidental injuries for one year. The policy recites that it was issued in consideration of the representations and warranties contained in the application for insurance, the stipulations in the policy, and also in consideration of an order drawn on the St. Louis, Iron Mountain and Southern Railroad Company. This order on the railroad company authorized its paymaster to deduct from the monthly wages of Walker, and pay to the insurance company, the following sums: $4.65, $4.70, $4.70, $4.70, in four installments. In obedience to this order, $4.65 was deducted from Walker's March wages, $4.70 from April and $4.70 from May wages. This order was not put in evidence, and it is not clear from the evidence whether, by the terms of the order, the remaining installment of $4.70 was to be paid from the June wages only, or whether it authorized the company to pay it from the June and July wages of Walker. Walker was taken sick in May, was sent to the railroad hospital, and remained there about two weeks. When he returned, the railroad company had another man employed in his place, but he still, so he says, remained on its payrolls, and did work as an extra hand for the wages of $1.25 per day. He worked five days in June, sixteen in July, and almost continuously from that time until in January, 1897.

The general auditor of the railroad company testified that Walker's name did not appear on the company's pay rolls after May, and that, as there was nothing due him for the months of June and July, out of which he said the last installment of $4.70 was to be paid the insurance company, his order was considered of no further validity, and dropped from consideration. The railroad company for that reason did not pay the insurance company the last installment. The policy sued on contained this provision: "The four installment payments, as specified in the above order, are premiums for consecutive

and corresponding insurance periods, two, two, three and five months. Every payment made and accepted on account of said order shall be applied to the installments · thereof in the order in which they fall due." Then follows a provision that "no claim shall be made under this policy for injuries occurring in any of said insurance periods if the corresponding or any previous installment premium has become due and remains unpaid." .

The insurance company claimed that the policy expired the 22d day of September, 1896, that being the ending of the third period of insurance, the 4th installment of the premium not being paid; but it did not notify Walker, nor return his order on the railroad company. About 1st of January, 1897, Walker procured a "lay off" for ten days to visit his mother in Louisiana, and while on that trip received an accidental injury, which resulted in the loss of his left foot and a portion of his leg. He afterwards brought this action to recover the sum of $500, the amount claimed by him as due under the policy. The insurance company denied liability on several grounds, one of which was that the last installment of the premium had not been paid. On the trial of the case the circuit ·court gave the jury, over objection of the defendant, the following instruction:

"The court instructs the jury that if they believe, from the evidence, that the plaintiff, Thos. J. Walker, has sustained an accidental injury by which he lost his left foot about the time mentioned in his complaint, and that prior to said accident he had obtained in the Pacific Mutual Life Insurance Company an insurance policy to indemnify him against accident, and that it was in force at the time that said accident occurred, and that by the terms of the said policy he was to receive the sum of $500.00 if he by accident received an injury that resulted in the loss of one foot within ninety days after said accident occurred, and that at the time the said policy of insurance was isssued to him he gave the said Pacific Mutual Life Insurance Company an order for all of the premiums due on said policy upon the St. Louis, Iron Mountain & Southern Railway Company, and that at that time he was an employee of said railway system, and that this order for this payment of premiums was to be paid out of his wages as such em-

ployee; and that three installments of said premiums were paid, and that, though plaintiff was continually in the employ of the said railway company up to the time of the accident, said insurance company gave him no notice of the non-payment of the last installment on said premium, and that within the time required by the insurance policy he gave notice of his said injury by accident,—then they will find for the plaintiff in the sum of $500, with 6 per cent. interest from the 1st of April, 1896, to date."

There was a verdict for the plaintiff, from which the insurance company appealed. The other facts sufficiently appear in the opinion.

*Morris M. Cohn,* for appellant.

*Fox & Gray,* of San Francisco, Cal., and *Z. T. Wood,* of counsel.

The statements as to his employment, made by appellee in his complaint, were materially different from his evidence, and the appellant should have been given a new trial on the ground of surprise. 11 Ark. 16, 19; 2 Thomp. Tr. § 2761. Appellee's injury was caused by his own negligence. Being a passenger, he should have kept his seat. 68 N. W. 866; Elliott, Railroads, §§ 1629–1630; 58 Ark. 277–279; 61 Ark. 509; 45 S. W. 1065. He assumed the extra hazards of riding on a freight car. Elliott, Railroads, § 1629. The appellant was under no duty to sue the railroad company for the premiums in order to keep appellee's policy alive, and his failure to make the payments forfeited it. 93 U. S. 24, 30, 31; 104 U. S. 88; 46 Fed. 355; 11 So. 671; S. C. 96 Ala. 570; 19 N. W. 513; 60 Wis. 431; 85 Ky. 677; 125 Ind. 189; 58 Md. 463; 96 U. S. 544; 104 U. S. 252. The first instruction for appellee was erroneous, because it assumed that it was the duty of the insurance company to give appellee notice of the non-payment of the June premium, and also because it assumed that said premium was payable out of any balance due on any other month. 85 Ky. 677; 45 S. W. 539, 543; 104 U. S. 88; 93 U. S. 24, 30, 31; 2 Joyce, Ins. § 1106. Appellant, having changed his occupation to one more hazardous, is bound by the

clause in the policy reducing the amount recoverable in such case.    2 Biddle, Ins. § 710; 58 Ark. 277; 45 S. W. 1005.    It was error to refuse the second instruction asked by appellant. 2 Biddle, Ins. §§ 895, 896.

*Geo. W. and Jas. C. Norman,* for appellee.

. The evidence sustains the verdict.    The application for new trial on the ground of surprise is insufficient.    2 Ark. 45; 33 Ark. 91; 29 Ark. 225.    Appellant should have complained at the time and not waited until he was moving for a new trial to allege surprise.    26 Ark. 496; 55 Ark. 567; 57 Ark. 60; 2 Ark. 33.

RIDDICK, J., (after stating the facts.)    This action was brought upon a policy of insurance against accidental injuries. One of the defenses against the action is based on the contention that a certain installment of the premium agreed to be given as a consideration for the policy was not paid.    The plaintiff, Walker, gave the insurance company an order on the railroad company, of which he was an employee, for the payment of this installment, it being specified therein that the same should be deducted from his wages.    The insurance company contends that by the terms of this order the payment could only be made from the wages of plaintiff for the month of June, 1896; that he had ceased to be an employee of the company before that month; that therefore the company owed him no wages for that month; and that the order was not paid, and could not be collected.    To show that the payment of this installment was not confined to the June wages, the plaintiff introduced a witness, who, over the objection of the defendant, was permitted to testify as follows:

"I heard a man by the name of Murphy, who was the agent of an accident insurance company, say that his company took orders for the premiums, and the railway company paid these orders out of the wages of its employees when they had anything coming to them, and that they held these orders till the employee had the money to their credit, and that then the railway company paid the order, and charged it to the employee;

but I do not know whether this man Murphy was an agent of the defendant in this case or not."

The only basis for the admission of this testimony is the fact that the policy sued on appears to have been counter-signed by one "Frank Murphy, special agent." There is nothing to show the identity of these two Murphys. But, even if it be admitted that it was Frank Murphy, the special agent of the defendant insurance company, who made the statement, still it was clearly incompetent, for it does not appear that in making the statement he was acting for the company, or had power to bind it by such admissions. If a principal was bound by statements made in every casual conversation of his agent, it would be hazardous to send out agents, and few could afford to employ them. This testimony should have been excluded, its admission being error of the most palpable kind.

The next question arises on the exception by defendant to the action of the presiding judge in giving to the jury the instruction copied in the statement of facts. It will be seen, by an examination of that instruction, that the jury were told, in substance, that if Walker was continuously in the employ of the railway company from the issuance of the policy up to the time of the accident, and if the insurance company gave him no notice of the non-payment of his order upon the railway company, he could in that event recover, even though the last installment due on the premium had not been paid. Now, it is by no means clear that the railway company had money of Walker in its hands out of which, by the terms of the order, the last installment could have been paid. On the contrary, there was evidence tending to show that the railway company owed Walker nothing. But, under the law as stated in this instruction, if Walker had collected and used every cent due him by the railway company, yet, if the insurance company failed to notify him of the non-payment of his order, it would be treated as a payment. There seems to be little justice in such a rule, for it is reasonable to suppose that Walker knew what the railway company owed him, and if he left nothing to pay his order, he knew that his order would not be paid, and in that event was not entitled to notice of its non-payment. Certainly, under no reas-

onable view of the law would Walker be allowed to hold the insurance company responsible for the non-payment of his order when he left no funds out of which it could be paid. *McMahon* v. *Travelers Insurance Co.,* 77 Iowa, 229; *Bane* v. *Insurance Co.,* 85 Ky. 677.

If, however, the railroad company retained funds in its hands belonging to Walker, out of which to pay this last installment, and the insurance company either failed to present the order, or, if presented and not paid, failed to return it to Walker, and made no effort to notify him of its non-payment, there would be grounds for holding the company liable, just as if the order had been in fact paid. If wages were due Walker from the railway company for the month upon which the order was drawn sufficient to pay the order, then, in the absence of any complaint or notice from the insurance company to the contrary, he might well presume that the order he had given it for the premium had been paid, or that the insurance company treated the order as a payment, and would not insist upon a forfeiture for non-payment of the premium. Having acted in a way that would naturally lead the insured to believe that his premium had been paid, the company should not, under such circumstances, be allowed to insist on a forfeiture for non-payment. *Lyon* v. *Traveler's Insurance Co.,* 55 Mich. 141; *National B. Association* v. *Jackson,* 114 Ill. 533; *Eury* v. *Insurance Co.,* 89 Tenn. 427.

Now, the instruction did not submit the question to the jury as to whether the railroad company had funds in its hands due Walker for wages for the month upon which the order was drawn, but permitted a finding against the insurance company on account of its failure to return the order and notify Walker of its non-payment, although he may have withdrawn all funds due him by the company, leaving nothing to pay his order, and it was therefore, in our opinion, erroneous and prejudicial to the rights of appellant.

As this case must be retried, we will call attention to another defect in this instruction relating to its form. With the exception above noted, it submits to the jury about every possible issue that could have been raised in the case. Few of

these questions were disputed on the trial, and the incorporation of all of them in a single instruction tended to make it of unusual length, and more or less confusing to the jury. For instance, this instruction submits to the jury the questions whether Walker, prior to his injury, had taken an insurance policy; whether, by the terms of the policy, he was to receive $500 for an accident causing loss of foot by dismemberment; whether he gave an order on the railway company for the payment of the premium; and whether these installments of this premium were paid. These and other questions which were not disputed at the trial, and about which there was no conflict in the evidence, were submitted to the jury, along with the disputed questions of fact. The province of the jury is to determine questions of fact about which there is conflict, and it is unnecessary to submit to them questions about which there is no dispute, and which are conclusively established by the evidence. *Catlett* v. *Ry. Co.*, 57 Ark. 461. By doing so in this case, the other points were obscured and clouded by an excess of verbiage. When necessary to refer to the undisputed facts, the presiding judge can state them to the jury as facts in the case which they must take as established. For instance, in this case the jury could have been told that the suit was based upon an insurance policy issued to Walker by the defendant company, and the terms of the policy bearing on the case could have been explained to them. They could have been further told that Walker gave an order on the railway company for four several sums to cover the premium, and that the first three of these installments had been paid, and that about them there was no dispute. After disposing of these and other undisputed facts, the judge could have submitted to the jury the questions about which there was conflict, and upon which they were asked to decide. In this way long and complicated instructions can be avoided, and the matter presented to the jury in a way that they cannot fail to understand the questions to be decided.

This defect, being one of form only, would not ordinarily be ground for reversal, but we have referred to it because we consider it to be of the highest importance in jury trials that they should comprehend exactly what they are asked to decide,

and they cannot do this unless the questions are clearly pointed out to them by the charge of the presiding judge.

There are other points discussed, but the views of the court about them sufficiently appear from what has been said. For the errors indicated, the judgment is reversed, and the cause remanded for a new trial.