AETNA LIFE INSURANCE COMPANY *v.* RICKS.

Opinion delivered May 7, 1906.

ACCIDENT POLICY—EFFECT OF FAILURE TO PAY PREMIUM.—Where an accident policy taken out by a railway employee stipulated that the premium payments should be payable out of assured's wages, and that no claim for injuries should be valid if sustained during a period in which its respective premium was unpaid, assured was not entitled to recover a claim for injuries where he had left the employment of the railway company after having drawn all of his wages and without paying a premium which was past due when the accident occurred.

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; reversed.

*Rose & Coleman,* for appellant.

1. This is not a case of forfeiture of a policy. The insurance by the express terms of the contract ceased upon the non-payment of the premium. The payment of the premium was a condition precedent to the continuation of the risk. 85 Ky. 677; 77 Iowa, 233; 6 Ind. 502; 43 S. E. 433; 41 S. E. 227; 4 Ill. App. 145; 212 Ill. 382; 109 Mo. App. 137; 101 Ill. App. 318; 212 Ill. 382; 70 N. E. 1122; Deitch's Ins. Dig. 1903, p. 310; 67 Ark. 147; 109 Mo. App. 137.

2. There is nothing in the contract to justify the contention that the insurer intended to extend a credit for the premium for the second insurance period until the pay day in October, since the application, the order and the policy provide that "the policy shall remain in force after the first insurance period only as continued by the actual payment of premiums for the consecutive periods following," etc. 86 S. W. 813; *Ib.* 814; 187 U. S. 335. The first instruction was erroneous, because by the terms of the contract appellee was not allowed until the pay day in October to pay the second premium; because, if he was allowed until that time the insurance for the second period would not have become effective until the second premium had been actually paid, and because it permitted a recovery in spite of the fact that the premium was not paid, and appellee had earned no wages from the railway company in the month from the wages of which it was to have been paid. It is expressed in the policy that no agent has authority to waive or change any condition or

provision of the policy. The envelope was not a part of the contract.

*Marshall & Coffman,* for appellee.

1. If Lantz had authority to make the contract and send the policy to appellee, he also had authority to fix the time of premium payment. 62 Ark. 348; 71 Ark. 242. There can be no default in payment until the payment is due. In this case the premium for the second period was not due until the pay day in October.

2. Since appellant claimed an abandonment of the policy, it was not error to permit appellee to testify that he intended to pay the premium. Neither was it error to admit evidence as to the time of the pay day, as that was one method of arriving at it, and defendant made no specific objection below. 89 Ia. 25; Wigmore on Ev. 1668.

RIDDICK, J. This is an action by James Ricks against the Aetna Life Insurance Company to recover the sum of one hundred and twenty dollars. The company on the 24th day of July, 1903, issued to the defendant a policy of insurance against accidents, and on the 20th day of October following the plaintiff was injured by a blast of dynamite that blew off his thumb. He claims that under the terms of the policy he is entitled to recover of the company $10 per week for twelve weeks, the time lost by reason of said accident. The company admits that it issued the policy, but alleges that the policy by its terms had lapsed for nonpayment of premiums by defendant, and was void at the time of the accident.

At the time the policy was issued Ricks was in the employ of the St. Louis, Iron Mountain & Southern Railway Company as assistant track foreman, with wages of $1.50 per day and board. Ricks at that time was working for the company in the Indian Territory, and his wages were paid monthly at Fort Gibson. The agent of the company who issued the policy testified that Ricks made an application for the policy on a printed form used by the company, and that he at the same time delivered to the agent an order for, or assignment of, a part of his wages for certain months. This order was also made on a printed form used by the insurance company. It authorized the insurance company to collect $4.25 from the railway company of the wages of Ricks

earned by him in each of the months of August, September, October and November, 1903, amounting in all to $17.

Ricks tesitfied that he did not sign any application for the policy, or give any order or make any assignment of wages to the company; that he received the policy through the mail, and that there was an indorsement on the envelope in which it was sent showing that Ricks had until the pay day in September to pay the first premium, and until the pay day in October to make the second payment. But, whether Ricks made a formal application for the policy or not, it is certain that he consented to accept it, and to pay the premiums referred to in the policy, for otherwise he would have no contract with the company. It must also have been understood that the insurance company should collect the premiums from the railway company, and that they should be deducted from Ricks's wages, for the first premium was so deducted and paid, and he does not deny that it was done with his consent. The policy itself clearly indicates that there was an agreement to that effect, and otherwise would be unintelligible.

The policy recites that it was issued "in consideration of the warranties made in the application,  *  *  *  and of an order of assignment for moneys therein specified on the St. Louis, Iron Mountain & Southern Railway," and contains the following provision:

"This policy is issued and accepted subject to the following conditions: 1. The payments specified in said order are premiums for separate and consecutive periods of two, three and five months, and each shall apply only to its corresponding insurance period. No claim for injuries sustained during any period for which its respective premium has not been actually paid in full shall be valid under this policy, except in case of just claim for injuries sustained before the end of the week or month from the wages of which the first premium is to be deducted, as provided in said order; but no claims shall be valid in any such case if the insured shall have left the employment of the employer named in the order without having earned in the week or month designated therein sufficient wages to pay said first premium, nor if he shall have collected or disposed of the wages earned in said week or month, so that there shall not remain sufficient for the payment of said premium."

The premium for the first insurance period of two months was deducted from the August wages due plaintiff by the railway company, and paid to the insurance company. But the plaintiff left the employment of the railway company before the end of that month. He earned no wages in September, and the premium which was to have been paid from the wages of that month was not paid at the time of his injury on the 20th of October. Plaintiff made the change in his occupation without notice to the insurance company, and at the time of his injury was in the employ of the street railway company at Little Rock. He testified that he knew the premium was unpaid, and that he had intended to pay it on the 25th of October, but the accident happened before that time.

As the policy was issued on the 24th day of July, the first insurance period of two months the premium for which was paid expired on the 24th day of September, and no other premium was paid. It will be noticed that the policy expressly stipulates that "no claim for injuries sustained during any period for which its respective premium has not been actually paid in full shall be valid under this policy." The policy makes an exception in the case of injuries received during the first period of insurance, but even that exception does not apply when the insured has left the employment of the employer named in the order without having earned in the month designated sufficient wages to pay the premium. If Ricks had remained in the service of the Iron Mountain Railway Company, and had earned wages during the month of September sufficient to pay the premium that was to be paid from the wages of that month, then there might be reason for holding that the policy had not lapsed, even though the insurance company had not, at the time of the injury, actually received payment of the premium. But he left the employ of the railway company before the month of September, and collected all wages due him, leaving nothing to pay the premium. Under these circumstances we think the circuit court erred in instructing the jury that "the plaintiff was allowed till the pay day on the Iron Mountain Railway at Fort Gibson to make the second payment of premium."

But, if we should concede, that, under the peculiar facts of this case, that instruction was correct, still the time of making

the payment certainly did not extend beyond the usual pay day of the railway company at the place named, which, according to the testimony of plaintiff himself, was about the 18th or 19th of the month. As the plaintiff was not injured until the 20th of October, we are of the opinion that, taking the view of the facts most favorable to the plaintiff, it is still clear that the policy had lapsed before the date of the injury. The judgment will therefore be reversed, and cause dismissed. It is so ordered.