### WALKER et al. v. PACIFIC MUT. LIFE INS. CO. (No. 9291.)

Court of Civil Appeals of Texas. Galveston. April 18, 1929.

Rehearing Denied May 16, 1929.

A. F. Sundermeyer and A. E. Dawes, both of Houston, for plaintiffs in error.

Andrews, Streetman, Logue & Mobley and T. A. Slack, all of Houston, for defendant in error.

GRAVES, J. Olive Walker and husband, who will be referred to as appellants rather than as designated in the record, complain of a judgment below denying the former any recovery against appellee insurance company upon its $2,000 accident and health policy, executed and issued on January 29, 1923, insuring Milo D. Clark, her prior husband, against accidental death caused solely by violent and external means, excluding suicide.

The learned trial judge filed these original findings and conclusions:

### "Findings of Fact.

"1. I find that on January 29th, 1923, the defendant executed and issued policy No. 4550820, insuring Milo D. Clark in the sum of $2000.00 against accidental death, which said policy is made a part of these findings of fact.

"2. I find that on April 29th, 1923, said Milo D. Clark wrote a letter to the defendant stating that he wished to cancel said policy on account of the fact that his wages had been reduced to the extent of $60.00 per month; that on May 8th, 1923, the defendant, by George F. Keck, its manager, wrote to plaintiff suggesting that he retain said policy, and offering inducements to said Milo D. Clark to do so; that the defendant received no reply to said letter. That on May 19th, 1923, without the knowledge of the defendant insurance company, said Milo D. Clark voluntarily left the service of the railroad company, and thereafter received from the railroad company all sums due him for services, making no deductions for the payment of the premium on said policy. That in fact only two premiums were paid on said policy for the months of March and April, 1923, and were paid out of the wages earned during said months.

"3. I find that two installments or premiums were paid, which covered a period of ninety days from January 29th, 1923.

"4. I find that there was no waiver by virtue of the letter from the insurance company dated May 8th, 1923, and that there have been no waivers by the insurance company.

"5. I find that the order attached to the policy was a part of said policy, and was attached to and made a permanent part of same at the time it was issued. I find that said order and provision amendment extending the time for notice were attached to the policy at the time of its receipt by Milo D. Clark, and was retained by him as such.

### "Conclusions of Law.

"I conclude as a matter of law that the plaintiff is not entitled to recover herein."

Subsequently these were supplemented by additional ones, which, through certiorari, this court has considered as part of the record, to the effect:

(1) That Clark's application for the policy, after naming his employer as the St. Louis Southwestern Railway Company of Texas and designating appellant, his wife at the time, as his beneficiary, contained among others these questions and answers:

"Did you agree to pay for the policy for which application is hereby made $54.50 in 5-1 installments of $9.10–9.00 each? Yes.

"If order on employer is given to provide for the payment of such installments, do you agree to pay such installments as provided in said order and do you hereby make said order (copy to be attached to policy) part of your contract with the Company, and do you further agree that, if order on employer is not given to provide such payment, the first of said installments shall be due without notice on the ——— day of ———, 19—, and one installment of like amount shall be due without notice on the same day of each succeeding month until all are paid, and further that if any payment be not made by 12 o'clock noon, Standard time, of the day when due, as above specified, all your rights under said policy and the rights of the beneficiary thereunder shall then and thereby become void, and that said policy can be reinstated only at the option of the Company and under the conditions of and in the manner provided in said policy? Yes."

(2) That, as part of both the application and of the policy to be issued thereon, to which it was intended to be and was in fact attached, he executed a pay order on the railway company directing it to pay—by deducting the amounts from his wages—these premium installments of $9.10 each for the months from March to July, inclusive, of 1923, and of $9 for August, which recited:

"This authorization is subject to the foregoing conditions and those on the reverse side hereof. * * *

### "Conditions (Reverse side).

"If the premium be payable * * * in six installments, the payment of the first, second, third, fourth, fifth, and sixth installments shall continue said policy in force for respective insurance periods of forty-five days, forty-five days, sixty days, sixty days, seventy-five days and eighty days * * * all periods to be compounded successively from the date of the policy.

"This policy after taking effect so continues for the period for which written unless I sooner leave the service of my present employer, or unless default be made in the payment of any installment, in either of which events my insurance shall at once terminate without notice except as it may be continued in force by reason of premiums previously paid. If by reason of not having been continuously at work I shall have

failed to earn from said employer, before any injury is sustained or sickness contracted, sufficient wages to pay the first of said installments, no claim shall arise or be valid under said policy."

(3) That Clark's letter of April 19, 1923, canceling the policy, and the insurance company's reply on May 8, 1923, offering him inducements to retain it, were respectively in these words:

(a) "I, Milo D. Clark, Policy No. 4550,-821, wish to cancel same as my wages have been reduced to the extent of $60.00 per month. Therefore I am unable to keep this policy in force. Wishing you to give this prompt attention and reply to, Milo D. Clark, Tyler, Texas."

(b) "It is unnecessary for you to deprive yourself of the good accident and health insurance you have, by reason of financial conditions. We will be glad to help you out, and we have asked the railroad company not to make a deduction from your May earnings, but to extend that until later. Additional extensions will also be granted upon request.

"This policy was issued to you in accordance with your signed application and pay order, to run for one full year and we do not contemplate prior termination.

"Thanking you for your patronage and expressing to you our pleasure in numbering you among our many policy holders. Very sincerely yours, Geo. F. Keck, Manager."

(4) That "Milo D. Clark did not accept such offer of the Insurance Company and disregarded wholly its letter of May 8th, making no reply thereto, and nothing further was ever heard by said defendant company from the said Milo D. Clark after the receipt of his letter of April 29th.

"On May 19th, 1923, Milo D. Clark voluntarily and without notice to the defendant Insurance Company severed his employment with the St. Louis Southwestern Railway Company of Texas and at no time thereafter notified the defendant Insurance Company that he had left the service of said St. Louis Southwestern Railway Company of Texas, the employer referred to in his application and upon whom his order for premium installments was made. On June 1st, 1923, after having left the service of St. Louis Southwestern Railway Company of Texas the said Milo D. Clark on his demand was paid by said company the full amount of all wages earned by him while in its employment for the first period of May, 1923, and on June 16th was paid by said Railway Company the full amount of all wages earned by him for the second period of May, 1923, and no deductions to cover any installments of premium due the Insurance Company was made by said Railway Company on either of such occasions. The said Railway Company upon his demand thereby paid him all wages he had earned while in its employment and the said Milo D. Clark did not leave with said St. Louis Southwestern Railway Company of Texas any money or make any provision for the payment of any installment of premium on his said policy with the defendant Insurance Company and did not directly or indirectly pay or cause to be paid any installment of premium on said policy of insurance No. 45508-21 other than the two installments heretofore mentioned, one being for the month of March and one being for the month of April as provided in his said pay order.

"At no time after quitting his employment with the St. Louis Southwestern Railway Company of Texas on May 19th, 1923, did Milo D. Clark enter the service of such company or work for it at any time and he made no arrangement for the payment of said premium installments other than as specified in the pay order attached to his said policy, and Milo D. Clark withdrew, received and accepted his wages from the St. Louis Southwestern Railway Company of Texas with full knowledge that no amount was being deducted for the payment of any premium installment and he did not intend to pay any other premium installment on such policy but considered such policy cancelled."

After a further recitation that Clark lost his life by diving into water on July 4, 1923, the same conclusion of law as before was reiterated, with the added specification that the policy was not in force at that time.

The facts thus found were all admittedly undisputed, so no attack is made upon any of them, but the appellants contend through many propositions that as a matter of law under them:

(1) Neither the pay order nor the forfeiture conditions so appearing on the reverse side thereof—being in a separate sheet and merely pasted onto the policy—constituted any part of the contract of insurance, because prohibited by the terms of articles 5060 and 4732, Revised Statutes of 1925, and article 4955 of 1911, which, considered together, in effect provide that the policy and application alone, in life insurance, contain the entire contract, and that such laws shall also govern accident insurance.

(2) It was not shown that the form of the pay order had been approved by the commissioner of insurance, as required by Rev. St. 1925, art. 4750.

(3) The first premium being payable from wages to be earned in March, under the quoted conditions appearing on the back of the pay order, even if it be considered as part of the contract, the policy did not take effect until the premium was paid on March 8; wherefore, the two premiums paid in March and April kept it in force until June 8.

(4) The insurance company's quoted letter of May 8 constituted an election not to declare the policy forfeited for the failure to pay the third installment of premiums due during that month, wherefore it waived such payment, the effect of which was to keep the insurance in force for an additional 60 days beyond June 6, or until August 5, more than 30 days subsequent to the insured's death.

Such are appellants' main contentions for a reversal, no attempt having been made to detail all the brief presents; the adverse determination we conclude must be made of these, agreeing as we do with the view taken of the cause by the trial court, disposes of them all.

To recover, among other requisites, it was thus necessary for appellants to successively show: (1) That Clark did not in his lifetime cancel the policy sued on; (2) that it did not take effect from and after January 29, 1923, the date it was admittedly executed and issued to run for one year, but that the effect of the pay-order recitations in that respect was to defer its effective date until March 8, 1923; (3) that the insurance company waived the making of the third or May payment, and treated the policy as being in effect without any provision at all being made to care for it until at least August 6, 1923.

■ No one of these essentials was met. In the first place, and quite irrespective of the technical question raised as to whether or not the pay order and its reverse-side forfeiture provisions were a part of the policy within the purview of the statutes invoked, the trial court's finding upon the undisputed evidence that it was binding upon Clark, and that he himself canceled the policy as a whole, cannot be gotten around; the order was the sole consideration or quid pro quo he gave for the issuance of the insurance to him; he availed himself of it, whereupon, regardless of the statutes, its burdens as well as its benefits became binding alike upon both the insurance company and himself; the principle applicable is thus stated by the Commission of Appeals in Southland Life Ins. Co. v. Hopkins, 244 S. W. 989, upon a parallel state of facts, where the contention was that the forfeiture provision of a premium note was not binding because violative of the statutes: "But aside from these considerations, the extension agreement represented by the note was binding upon the insurance company, regardless of whether it violated either or both the statutory articles invoked. Insurance Co. v. Tabor [111 Tex. 155] 230 S. W. 397. And if the insurance company was bound, then clearly the insured was bound also. If the latter is permitted to invoke the extension agreement, and avoid the consequences of lapse by virtue of failure to pay the premium in accordance with the terms of the policy, the insured must take the extension agreement charged with its burdens as well as clothed with its benefits. If held valid for one purpose, it must be held valid for all purposes. If void as to the obligations imposed on the insured, it is void as to the benefits accruing to the insured. Ins. Co. v. Price, 117 Ky. 25, 77 S. W. 384."

■■ Neither did the requirements of these statutes in any way obviate the effect of Clark's voluntary discontinuance of the protection; he was not bound to keep the policy in force, and when he so unequivocally notified the appellee on April 29th that he would not do so, and followed that up by first ignoring its overture of May 8th looking toward a continuation, then by quitting his employment with the railway company and withdrawing all wages due him, thereby making the payment of any further premium-installments impossible, that ended the matter. Employers' Liability Corp. of London v. Rochelle, 13 Tex. Civ. App. 232, 35 S. W. 869; Pacific Mutual Life Insurance Co. v. Walker, 67 Ark. 147, 53 S. W. 675; Ætna Life Insurance Co. v. Ricks, 79 Ark. 38, 94 S. W. 923; Landis v. Standard Life & Accident Ins. Co., 6 Ind. App. 502, 33 N. E. 989.

■ In the second place, there seems no warrant for the contention that the policy never became effective until March 8th; while it does not in explicit statement recite that it is to be in effect from and after its date, every intendment shows such to be its meaning; by written stipulation of counsel for both sides it was *executed and issued* on January 29, 1923, and was to be effective for one year from that date; indeed, the sole source of appellants' view is this single sentence previously quoted from the pay order: "If by reason of not having been continuously at work I shall have failed to earn from said employer, before any injury is sustained or sickness contracted, sufficient wages to pay the first of said installments, no claim shall arise or be valid under said policy."

This seems to us merely expressive of the general arrangement made, that Clark was to be insured as an employee of the railway company, his premiums being payable out of his wages as such, and that he was to continue in that work so long as not prevented by sickness or accident.

■ Equally untenable is the claim that appellee waived a forfeiture of the policy by merely writing its letter of proposal on May 8th; at that time no default in any of the stipulated conditions had been made by Clark, he was still an employee of the railway company which was honoring his pay order on it, his premium installments from the March and April wages had already been paid, and no wages for May were due him until the last day of that month; in other words, no notice or knowledge of any facts even tending to invalidate the insurance had then come to the appellee, because none existed. Since

"waiver" is the voluntary relinquishment of a known right, there could have been nothing of the sort in this instance. Cooley's Briefs on Insurance (2d Ed.) vol. 5, pp. 3955 and 3957.

Were we called upon to pass on appellants' insistence that the pay order and its indorsements were interdicted by the cited statutes from being considered a part of this policy, despite the fact that they were referred to in the application and attached to and pasted onto the policy itself when delivered, we would be constrained to hold that our courts have in effect determined the matter the other way, in such cases as North River Ins. Co. v. Thomas (Tex. Civ. App.) 264 S. W. 589; Hatton v. Association (Tex. Civ. App.) 10 S. W.(2d) 239, Dent v. Ins. Co. (Tex. Civ. App.) 6 S.W.(2d) 195; Hopkins v. Ins. Co., 225 N. Y. 76, 121 N. E. 465.

These conclusions require an affirmance; that order has been entered.

Affirmed.