FERGUSON *v.* MASSACHUSETTS BONDING & INSURANCE COMPANY.

Opinion delivered June 23, 1930.

*C. V. Holloway* and *Trimble, Trimble & McCrary,* for appellants.

*Dillon & Robinson,* for appellee.

SMITH, J. Appellants were the beneficiaries in a policy of insurance issued by appellee, the Massachusetts Bonding & Insurance Company, on December 7, 1928, upon the life of Eddie Harris. Attached to the policy and made a part thereof is what is known as a paymaster's order, which was signed by Harris, the insured, a section hand employed by the Missouri Pacific Railroad Company, authorizing that company to pay to the insurance company the sum of $5.90 out of his wages for the month of January, 1929, and the sum of $2.95 for each subsequent month, beginning February 1, 1929. The premium of $2.95 was payable monthly, and the paymaster's order of $5.90 was intended to pay the premiums for the months of December, 1928, and January, 1929. The insured was killed on January 13, 1929, and this suit was brought to collect the insurance. After hearing all the testimony, the court directed a verdict in favor of the insurance company, for the reason that the

premium had never been paid, and that therefore the policy had lapsed, if, indeed, it had ever been in effect, and this appeal is from the judgment rendered upon the verdict thus returned.

Nellie Ferguson, the sister of the insured and one of the beneficiaries in the policy, testified that her brother, the insured, visited her about·a week before his death, and delivered to her the policy here sued upon; that he showed her his railroad pass, his identification card and a receipt for the money he had paid on the policy. The receipt was not produced at the trial, and the appellee insurance company denies that a receipt was ever issued.

The testimony of the witness Nellie Ferguson is very vague and indefinite in regard to this receipt, as she stated that she "just got a glimpse of it." She did not know what sum of money the receipt showed to have been paid, but that "the receipt had his (the insured's) name written in it in black type and red type filled in part of it." That the word "Massachusetts" was the only word in the receipt that she could pronounce, but it showed that her brother's premium was paid to February 1, 1929, which date was later than that of her brother's death.

The probative value of this testimony is wholly destroyed by certain undisputed and incontrovertible facts.

To begin with, the agent of the insurance company who wrote and delivered the policy testified that the insured did not personally pay anything on the premium, and that it was not contemplated that he should do so, and the recitals of both the insurance policy and the paymaster's order corroborate this testimony.

The first paragraph of the policy provided that, in consideration of the statements and representations contained in the application for the insurance and of the payment of the premium as provided for in the paymaster's order, the company had insured the applicant.

The paymaster's order bore the same date as the policy and was signed by the insured, and the relevant portions thereof read as follows:

"PAYMASTER'S ORDER.

"Dated at St. Louis, 12-7-1928.

"To the Paymaster of the Missouri Pacific
Railroad Company,

"St. Louis, Missouri.

"I hereby request and authorize you to deduct and pay for me to the Massachusetts Bonding & Insurance Company, or its duly authorized agent, the sum of $5.90 out of my wages for the month of January, 1929, and $2.95 out of my wages for each consecutive month thereafter during the period of my employment with my said employer, for premiums on above numbered policy of insurance issued to me by said insurance company. * * *

"Express agreement: It is expressly agreed (1) that the first payment is to cover the insurance for the first period of insurance specified in said policy, and each subsequent payment shall be considered as the premium for one calendar month; (2) that each payment shall apply only to its corresponding insurance period; (3) that the company shall not be liable for any loss or disability resulting from injury sustained or illness beginning while I am in default in the payment of any premium; and (4) that this order is made a part of the contract of insurance."

The insured voluntarily left the service of the railroad company on December 21, 1928, at which time he drew all the wages then due him. Testimony to this effect was given by the paymaster of the railroad company, who also testified that no payment was ever made by the railroad company to the insurance company under the paymaster's order, for the reason that the insured had quit the service of the railroad company and had drawn all the wages then due him. The railroad company therefore had no funds on hand with which to pay the $5.90 premium covering the months of December, 1928, and January, 1929.

Had the insured paid the premium to the insurance company's agent, he would not have given a paymaster's

order for the same premium, yet it is an undisputed fact that he did give a paymaster's order on the date the policy was issued for the December and January premiums, and it is also undisputed that the order was not honored because the insured voluntarily quit the service of the railroad company before earning the wages out of which the premiums were to be paid, and drew all of his wages when he quit. It may be said, in this connection, that the insurance agent testified that premium receipts were not issued under policies of this character, and that the paymaster's record showing the deduction of monthly premiums from the insured's wages was the only receipt contemplated.

The insurance agent, after testifying that no premiums had been paid him, further testified that the first deduction of wages contemplated under the paymaster's order was to be made January 1, 1929, but, if this interpretation of that instrument be accepted as correct, no different conclusion could be reached, for the reason, as has been stated, that the insured had, prior to that time, quit the service of the railroad company, and nothing was due him on January 1st.

The case of *Ætna Life Ins. Co.* v. *Ricks*, 79 Ark. 38, is very similar to the instant case. Speaking for the court, Mr. Justice RIDDICK there said: "If Ricks had remained in the service of the Iron Mountain Railway Company, and had earned wages during the month of September sufficient to pay the premium that was to be paid from the wages of that month, then there might be reason for holding that the policy had not lapsed, even though the insurance company had not, at the time of the injury, actually received payment of the premium. But he left the employ of the railway company before the month of September, and collected all wages due him, leaving nothing to pay the premium." Under these circumstances the court held that it was error not to have directed a verdict in favor of the insurance company.

We conclude, therefore, that the trial court was warranted in declaring, as a matter of law, in directing a verdict for the insurance company, that there was no competent evidence, which the jury had the right to accept as true, to the effect that the premium had ever been paid. The plan for paying the premium had been defeated by the insured's own act before his death, and the policy had therefore ceased to be effective as a contract of insurance.

The judgment of the court below must therefore be affirmed, and it is so ordered.