CLINTON v. MODERN WOODMEN OF AMERICA.

Opinion delivered July 3, 1916.

FRATERNAL INSURANCE—CONDITIONS IN CERTIFICATE—FAILURE TO PERFORM.—There can be no recovery on a benefit certificate, where it provided that it became binding only when delivered to the insured in a certain manner, and where the insured died before delivery to him in the manner prescribed.

Appeal from Yell Circuit Court, Dardanelle District; M. L. Davis, Judge; affirmed.

John B. Crownover, for appellant.

1.   It was error to direct a verdict.   When there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, a trial court should not take the case from the jury.   89 Ark. 3; 84 Id. 57; 77 Id. 556; 63 Id. 94.   On appeal this court will take that view of the evidence most favorable to the party against

whom the verdict is directed. 89 *Id.* 372; 73 *Id.* 561; 76 *Id.* 520. Delivery or non-delivery of a policy is a question for a jury. 97 *Id.* 232. The trial court was influenced solely by the decision in 104 Ark. 541. But that case was decided solely on the ground of false answers to a question in the application.

2. Deceased was adopted according to the ritual; nothing more was necessary to be done to put deceased's name on the docket. The burden was on the society to prove all facts peculiarly within its knowledge. 65 Ark. 269; 12 Fed. 465.

3. The certificate was delivered. *Manual* delivery before death not necessary. 2 L. R. A. 207; 83 Ark. 17; 94 *Id.* 389. *Parol* contracts of insurance have frequently been held valid. 83 Ark. 22; 72 Mich. 316; 1 Joyce on Ins., § 34; 1 Bacon Ben. Soc., 305-6. The insurance was consummated when the acceptance was posted. 21 Am. Dec. 305; 94 Ark. 253; 72 Am. Dec. 379; 42 L. R. A. 88; 103 S. W. 317. Where nothing remains to be done by the insurer, the mailing is delivery. 97 Ark. 229; 65 *Id.* 581. It is binding if never delivered. 66 Ark. 621; 26 Maine, 18-29. Acceptance and mailing the policy put the contract in force. 94 Tex. 25; 57 S. W. 635; 86 Am. St. 813; 89 Ark. 471; 97 *Id.* 229; 65 *Id.* 581. The policy itself is the contract. 105 Ark. 105. This was an ordinary insurance policy. 52 Ark. 205; 105 Mass. 160; Niblock Ben. Soc., 163.

4. It was not necessary to sign the certificate. 22 L. R. A. 772; 89 Ark. 378; 11 Atl. 84; 64 Ark. 506.

5. Proof of death was made, but it may be waived. 72 Ark. 365; 87 *Id* 171; 79 *Id.* 475; 91 *Id.* 49. It was the custom to leave the policies with the local clerk. 69 Ark. 313; 85 *Id.* 568; 81 *Id.* 549; 99 *Id.* 204.

6. Forfeitures are not favored by the courts. 67 Ark. 511; *Ib.* 558; 20 *Id.* 214; 21 Minn. 85; 101 Mass. 558. 5 Ind. 103. Stipulations are construed most strongly against the insurer. 94 Ark. 417; 58 *Id.* 528; 89 *Id.* 471.

*Truman Plantz* and *Geo. G. Perrin*, of Rock Island, Ill., and *James A. Gray*, for appellee.

A verdict was properly directed for defendant. The contract consisted of the application, the certificate and the by-laws. A member must be adopted; there must be *manual* delivery of the certificate to the applicant while he is in sound health and signed by the applicant. Proof of death must also be made. These are all essentials to the validity of the contract; none of them were complied with and there was no waiver of them. The Arkansas cases are conclusive. 104 Ark. 538; 111 *Id.* 435. See, also, 142 S. W. 641; 130 *Id.* 861; 87 *Id.* 535; 119 N. W. 426; 64 S. W. 36; 52 L. R. A. 444; 109 N. W. 159; 88 Ark. 120; 142 S. W. 641; 130 *Id.* 858; 144 N. W. 843; 149 *Id.* 33; 224 Fed. 74; 104 N. E. 653; 175 S. W. 170 and 75, other citations from various States.

SMITH, J. Appellant brought suit to recover upon a certificate of insurance issued in her favor upon the life of Walter W. Clinton, her husband. The company against which judgment was prayed is a fraternal beneficiary society, and defended the suit upon numerous grounds. Among other defenses interposed was that Clinton, in his written application to become a member of the defendant society, had given his assent that his application should be governed by the by-laws of the society, and that no claim of benefit should be made by himself, or his beneficiary, until his application for membership had been approved, and he had been regularly adopted into the society in accordance with the ritual thereof, and his certificate of membership manually delivered to him by the camp clerk while he was in sound health. These by-laws were offered in evidence and contained the provisions that the liability of the society for the payment of benefits upon the death of a member should not begin until the applicant had received and signed his certificate, while in good health, and that the certificate should not be of any force or effect until the adoption ceremony provided in the ritual of the order had been performed, and that upon the adoption of such member, he should pay the dues for the current month, which included the per capita tax and the sanatorium

tax, and that the payment of these dues should be made before the policy should be effective. Section 39 of the by-laws provides that no officer of the society nor any local camp officer or member thereof is authorized or permitted to waive any of the provisions of the by-laws of the society which relate to the contract between the member and the society.

The proof shows that Clinton's application to become a member was made on March 20, 1915, and that the application was accepted and that the benefit or membership certificate was issued thereon March 31, 1915, and was mailed on that day to L. C. Adams, clerk of the local camp at Dardanelle, and was received by that officer on Friday night after supper. Clinton became ill Thursday night or Friday morning, and called a physician to see him about noon Friday, April 2, when it was discovered that he was suffering from an attack of appendicitis, and he was carried to Little Rock the following day for an operation, and died on the following Monday. The clerk of the local camp never saw Clinton after the receipt of the certificate, and the certificate was never delivered to nor signed by Clinton. Clinton never paid the first assessment, nor the camp dues, nor was he adopted into the order in accordance with its ritual, nor was any attempt made to deliver the policy by the camp clerk. There was proof, however, that the camp clerk had the certificates of several members in his possession, and that the certificate of at least one of these members had never been delivered to that member. but had always been retained in the possession of the camp clerk.

At the conclusion of the evidence, the court directed a verdict in favor of the defendant insurance company, and this appeal has been prosecuted from the judgment pronounced thereon.

There appear to be a great many cases which discuss the legal principles which control the decision of this case, and we have been cited to a number of them in the briefs. We find no occasion, however, to go beyond the decisions of our own court for cases which announce these principles. Two cases, which are apparently exactly in point,

are *Woodmen of the World* v. *Hall,* 104 Ark. 538, and *Peebles* v. *Eminent Household of Columbian Woodmen,* 111 Ark. 435.   In the first cited case there is set out the provisions of the application and of the by-laws, which are almost identical with those involved in this litigation. It was there held that compliance with these rules and by-laws was a condition precedent and that there was no valid contract of insurance until they had been complied with.

The question of waiver was raised there, as it is here, but the court there said:

"But it is well settled by the weight of authority that the officers and subordinate lodges of a mutual benefit association have no authority to waive the provisions of its by-laws and constitution which relate to the substance of the contract between the applicant and the association."

In the case of *Peebles* v. *Eminent Household of Columbian Woodmen, supra,* the by-laws contained the provision that the certificate should not be effective until its delivery to the insured while in good health.   We discussed there the meaning and object of this provision, and we there said that this condition was placed in the policy for the benefit of the insurance association, and that it was intended thereby that the representative of the order should ascertain for the order whether the proposed member was, in fact, in good health, and while it was there held that subordinate officers and lodges might become the agent of the governing body in the discharge of administrative duties, and might in the discharge of these duties estop the company to deny that they had been performed, it was there recognized that the provision for the performance of these duties was valid, and compliance with the terms thereof a condition precedent. But it was there held that the conduct of the officer of the local lodge, whose duty it was to ascertain whether the member was in good health at the time of the delivery of the certificate to him, was such as to make a question for the decision of the jury as to whether the company was estopped from denying that the local officer had dis-

charged that duty. But it was there held, in effect, that the certificate was not in force until that duty had been performed. The duty there to be performed by the officer of the subordinate lodge was to ascertain that the member was in good health at the time of the delivery of the certificate, and the evidence in that case presented a question of fact for the decision of the jury as to whether the duty had been discharged. Here there was no delivery of the policy, nor attempt to ascertain the health of the applicant. Indeed, such effort would have disclosed that the applicant was not in good health, and it would, therefore, have been the duty of the local officer to refrain from making the delivery.

It appears, therefore, that the verdict was properly directed, and the judgment of the court below will be affirmed.