SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* NEWSOM.

Opinion delivered February 9, 1920.

1. INSURANCE—CONSTITUTION OF BENEFIT SOCIETY.—The constitution and by-laws of a mutual benefit fraternal society form the basis and constitute a part of the contract of insurance.

2. INSURANCE—FAILURE TO PAY DUES.—If a member of a mutual benefit society failed to pay his dues as provided in the constitution and by-laws of the society, he thereby became automatically suspended from the order, and his policy was rendered null and void unless it waived the forfeiture or is estopped to rely on it.

3. INSURANCE—BENEFIT SOCIETY—LOCAL AGENT.—In a mutual benevolent society composed of a sovereign camp and subordinate camps, a clerk of a local camp, charged with the duty of collecting and forwarding monthly assessments or dues, and subject to suspension or removal for failure to discharge his duties, is an agent of the society.

4. INSURANCE—ESTOPPEL TO DENY PAYMENT.—Where a member of a local lodge of a mutual benefit society had arranged with the clerk of the local lodge to pay his dues through drafts on the member's bank, which arrangement had been carried out for many years, the society, after the clerk failed to draw for a month's assessment through a mistaken belief that it had been paid, was estopped to claim a forfeiture for nonpayment of the assessment.

5. INSURANCE—BENEFIT CERTIFICATES.—The insurance certificates issued by benefit societies to their members, so far as the insurance features are concerned, are to be regarded the same as any other ordinary policy or contract of insurance issued by companies engaged in that business.

6. INSURANCE—WAIVER OF CONSTITUTION AND BY-LAWS.—Acts 1917, No. 462, section 20, providing that the constitution and by-laws of a mutual benefit society may provide that no subordinate body nor any of its subordinate officers or members shall have power to waive any provisions of the law and constitution, is applicable to foreign as well as domestic societies.

7. APPEAL AND ERROR—QUESTION RAISED ON APPEAL.—A statute which governs fraternal societies must be given full force and effect in the final decision of causes to whch it is applicable, though it was not called to the attention of the trial court or the appellate court until rehearing.

8. INSURANCE—"WAIVER" AND "ESTOPPEL" DISTINGUISHED.—The terms "waiver" and "estoppel," though often used interchangeably with reference to insurance contracts, are distinguishable; waiver being an intentional abandonment or relinquishment of a known right, and estoppel being the effect of a party's conduct whereby he is precluded from asserting rights which might otherwise have been asserted.

Appeal from Chicot Circuit Court; *Turner Butler,* Judge; affirmed.

*T. E. Helm,* for appellant; *Gardner K. Oliphint,* on the brief.

1. The constitution and laws of the order formed part of the contract and must have been complied with before there was any liability. 1 Bacon on Ben. Soc., §

81; 80 Ark. 419; 104 *Id.* 538; 81 *Id.* 514; 136 *Id.* 355. When the assured became a member he assented to all its by-laws and is conclusively presumed to have made himself familiar with them. 104 Ark. 538-544; 1 Bacon on Ben. Soc., § 1199; 19 R. C. L., § 17, pp. 1198-9. He must take notice of the laws of the order. *Ib. supra;* 209 S. W. 379-380. A custom of the clerk of the local order could not bind defendant. The insured was bound by the by-laws. 71 Ark. 295; 208 S. W. 587; 52 Ark. 201-206. The provision in the laws as to "waivers" is sufficient to warrant a reversal and dismissal of their cause. The insured failed to pay the March assessment and his policy lapsed. The officers of subordinate lodges have no authority to waive the payment of premiums. 104 Ark. 544; 172 S. W. 687-8; 85 S. E. 827; 125 Ark. 449; 92 Pac. 971; 25 L. R. A. (N. S.) 78; 104 Ark. 538.

2.    There was no waiver of the *ipso facto* forfeiture by reason of the failure of the local clerk to draw for the premium, as he was insured's agent and not that of the sovereign camp. 22 Mo. App. 127; 137 Mass. 368; 24 Fed. 450; 31 *Id.* 62; 75 S. W. 531; 214 S. W. 583; 85 S. E. 827; 80 Pac. 375; 80 *Id.* 1110; 106 *Id.* 328-330; 89 N. W. 773. See also 89 N. W. 773; 119 *Id.* 694; 135 S. W. 201; 168 *Id.* 1026; 117 Fed. 369. Neither waiver nor estoppel can exist without knowledge of all concerned with the transaction. May on Ins., § 505; 18 Wall. 255.

*Harry E. Cook,* for appellee.

None of the rules or by-laws require any particular manner of making the payment of premiums or dues. For eleven years the payments had been made through the Bank of Portland by draft of the local clerk and appellant is bound by the acts of the local clerk. Forfeitures are not favored. 67 Ark. 506-511-12; 113 Ark. 174-181; 103 *Id.* 171; 130 *Id.* 12; 132 *Id.* 546; 62 *Id.* 43; 65 *Id.* 54; 89 *Id.* 111; 92 *Id.* 378; 94 *Id.* 227; 99 *Id.* 476.

The local clerk had exclusive and complete control and authority over the collection and remittance of dues and assessments and his acts are binding on appellant.

*Supra;* 94 Ark. 578; 133 N. C. 179; 9 Howard 390; 46 Atl. 1005; 59 Neb. 451; 81 N. W. 312; 165 N. Y. 608. See also our own decisions, 51 Ark. 440; 49 *Id.* 320; 100 *Id.* 212; 99 *Id.* 204; 67 *Id.* 506; 111 *Id.* 435; 104 *Id.* 538; 129 *Id.* 450; 3 Sup. Ct. Reporter, p. 1. The law is with the appellee and the evidence sustains the judgment.

WOOD, J.   This action was instituted in Chicot Circuit Court by the appellee against the appellant to recover on a certificate of insurance issued by the appellant to the husband of the appellee, in which certificate the appellee was the beneficiary.

The appellant is a mutual benefit secret fraternal association. The appellee alleged in substance that the appellant was authorized to do a life insurance business among its members in the State of Arkansas; that in July, 1908, her husband, Asa J. Newsom, became a member of the appellant, and that it issued to him a certificate insuring his life in the sum of $1,000 to be paid to the appellee in case of his death; that on the 4th day of April, 1918, Newsom died, and that at the time of his death all dues and assessments due the appellee had been paid; that appellant had been duly notified of Newsom's death and refused upon demand to pay the appellee the amount of the sum due her under the certificate.

The appellant answered admitting the issuance of the certificate and that the appellee was the beneficiary named therein and admitting the death of Newsom. But the appellant denied that Newsom had complied with the constitution and by-laws of the appellant in that he failed to pay the dues of the Sovereign Camp for the month of March, 1918, and that on account of such failure under the by-laws Newsom became suspended and remained so at the time of his death, whereby his contract of insurance was rendered void.

The material facts upon which the issue thus joined was heard are undisputed, and they are as follows: On the 29th of June, 1908, Asa J. Newsom made written application for membership and participation in the benefi-

ciary fund of the appellant. He was received as a member and on July 10, 1908, the appellant issued to him a certificate in the sum of $1,000 in which the appellee was named as the beneficiary.

The certificate among other things, recited that it was issued and accepted subject to all the laws, rules and regulations of the fraternity then in force or that might thereafter be enacted; that the certificate should be null and void if the insured did not comply with all such laws, rules, and regulations of the Sovereign Camp of the Woodmen of the World, and with the by-laws of the camp of which he was a member.

There were these further recitals: ''This certificate is issued in consideration of the representations, agreements and warranties made by the person named herein in his application to become a member and in consideration of the payment made when introduced in prescribed form, also his agreement to pay all assessment and dues that may be levied during the time he shall remain a member of the order.

''If the admission fees, dues and Sovereign Camp fund assessments levied against the person named in this certificate are not paid to the clerk of his camp as required by the constitution and laws of the order, this certificate shall be null and void and continue so until payment is made in accordance therewith.''

The application contained among other things the following recitals: ''I hereby consent and agree that this application, consisting of two pages, to each of which I have attached my signature, and all the provisions of the constitution and laws of the order, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not.

''I agree that, if I fail to comply with the laws, rules and usages of the order now in force or hereafter adopted, my beneficiary certificate shall become void and

all rights of any person or persons thereunder shall be forfeited.''

''I agree to pay all assessments and dues for which I may become liable while a member of the order, as required by its constitution and laws.''

The pertinent provisions of the constitution and laws of appellant are as follows:

''Section 3.  The object of the society is to combine white male persons of sound bodily health, etc., into a secret, fraternal beneficiary and benevolent society; to create a fund from which, on the death of members who have complied with all the requirements, the beneficiaries of said members may be paid according to the agreements; that a monument shall be erected at the grave of such member who dies in good standing and according to the contract and agreement with the society.''

''Section 56.  In order to pay death losses, disability benefits, monument obligations, emergency fund and Sovereign Camp general fund dues, every applicant admitted to membership to the Sovereign Camp, Woodmen of the World, on or after September 1, 1901, and to whom a beneficiary certificate is issued, shall annually pay to the Sovereign Clerk, in advance, an assessment based on their ages at nearest birthday at a date of entry (except as otherwise provided in sections 42 and 43 of the constitution and laws) as specified in the following table of rates.''

Then follows the table of rates showing that for the age of 40 the annual assessment on $1,000 is $15.84.  Then follows the provision that members should they so elect may pay the same in 12 monthly installments to the clerk of their camp on or before the first day of each month based on a table of payments.  Then follows the table showing that at the age of 40 on a certificate of $1,000 the monthly payment is $1.32.

''In the event the insured has not paid his annual assessment in advance, but has paid installments of his assessment and dues up to and including the month of his death, the Sovereign Camp shall deduct from the

amount of his certificate the balance due for the install-
ments to cover the entire annual assessment.''

"Section 60. The following conditions shall be made
a part of every beneficiary certificate, and shall be bind-
ing on both member and this society:

"*First.* This certificate is issued in consideration
of the representations, warranties and agreements made
by the person named herein in his application to become
a member, and in consideration of the payment made
when introduced in prescribed form; also his agreements
to pay all assessments and dues that may be levied during
the time he shall remain a member of this society.

"*Second.* If the admission fees, dues and Sovereign
Camp fund assessments levied against the person named
in this certificate are not paid to the clerk of his camp as
required by the constitution and laws of this society, this
certificate shall be null and void and continue so until
payment is made in accordance herewith.

"*Waivers.* Section 69 (a). No officer, employee or
agent of the Sovereign Camp or of any camp has the
power, right or authority to waive any of the conditions
upon which beneficiary certificates are issued or to
change, vary or waive any of the provisions of this con-
stitution or these laws, nor shall any custom on the part
of any camp or any number of camps—with or without
the knowledge of the Sovereign officer—have the effect
of so changing, modifying, waiving, or foregoing such
laws or requirements. Each and every beneficiary cer-
tificate is issued only upon the conditions stated in and
subject to the constitution and laws then in force or here-
after enacted.

"(b) The constitution and laws of the Sovereign
Camp of the Woodmen of the World now in force, or
which may hereafter be enacted, by-laws of the camp now
in force or which may be hereafter enacted, the applica-
tion and certificate shall constitute a part of the benefi-
ciary contract between this society and the member.

"Section 110. Every member of this society shall
pay to the clerk of his camp one annual assessment or one

monthly installment of assessment as required in section 56. * * *

"(b)   If he fails to make any such payments on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

"Section 113.   On or before the fifth day of every month the clerk of each camp shall cause a warrant to be drawn on the banker of his camp, signed by himself and the consul commander, for all the Sovereign Camp dues in the hand of the banker then due the Sovereign Camp, and forward said funds and all other funds due the Sovereign Camp to the Sovereign Clerk.   Such amounts shall be remitted in money order, or bank draft with exchange, payable to the order of the Sovereign banker.   Accompanying such remittances, the clerk shall also forward such detailed statement of the standing of the members in the camp as shall be required for the information of the Sovereign Clerk, upon blanks furnished for that purpose."

"Section 94.   He shall deliver or forward to the last known postoffice address of the person paying the same, a receipt for all moneys paid due the camp, pay the same to the banker, taking his receipt therefor, attest all warrants drawn on the banker; also beneficiary certificates and other official documents, and attach the camp seal.

"(e)   He shall remit all funds due and belonging to the Sovereign Camp to the Sovereign Clerk as by law provided.   In case of failure of the clerk of the camp to comply herewith, the Sovereign Commander shall have the right to declare his office vacant and require the election and installation of his successor."

"Section 119 (b).   Should any clerk knowingly violate this section, he shall on proof thereof be suspended from his office by the Sovereign Commander and expelled from this society by his camp."

The clerk of the Lakeside Camp of the appellant, the camp of which Newsom was a member, testified that Newsom resided at Portland; that he paid his assessments

up to March 1, 1918, by draft which witness drew on the Portland Bank with his receipt attached. Newsom had an agreement with witness by which a draft was to be drawn each month on the Portland Bank with witness' receipt attached, and this had been done since witness went into the office of clerk of the local camp, a period of about a year and a half and up to but not including the installment for March, 1918; that on March 1st witness drew a draft on the Bank of Portland with receipt attached for $1.35, which was to cover the following amounts: Sovereign Camp fund $1, camp monthly dues 25 cents, specials ten cents. All assessments had been paid by Newsom prior to that time in that manner. Newsom died the 4th of April. Witness notified the head camp of the fact and asked them to send the necessary papers to be filed to constitute proof of the death and also a statement for the unpaid premium to be deducted from the policy. Witness received in response a statement from the Sovereign Camp showing a balance due by Newsom at the time of his death on account of the difference between old and new rate since September 1, 1915, and unpaid installments to complete annual assessment in the sum of $4.40. With this statement was an order for the deduction of the above amount to be signed by the beneficiary. In the statement was a recital that the appellant "does not admit a liability in said certificate until proofs of death have been duly executed and approved." The receipt for the February assessment was made on the 24th of March and shows that Newsom was paid up to and including February dues. The March report was made on the 24th day of April. That report shows that Newsom was dead. Under the regulations of appellant the report should have been made on or before the 5th of each month. In witness' report for March it shows that the draft was not drawn the first of April for the March report. In making up the statement witness took the statement from the head camp of the amount of the deduction to be made from the certificate which was to be signed by Mrs. Newsom, the beneficiary,

as the amount due the head camp and he did not, therefore, draw for the. March assessment. Witness did not draw the draft for the monthly assessment the first of each month but drew when he went to the bank to collect for the different ones at the bank. Newsom relied on witness to draw the draft to pay. his monthly dues and attach the receipt of witness thereto and witness had always done that. It had been the custom of witness to go to the bank and draw drafts for the installments due by other members. Witness notified appellant of the death of Newsom by post card previous to the time he sent in his regular report. The reason witness didn't draw a draft for the March dues was because he was under the impression from the deduction statement Mrs. Newsom had sent the money and paid the March dues, by reason of the deduction.

Witness further testified that it had been his custom to send in his monthly report after the time prescribed by the by-laws, and that the Sovereign Camp or Parent Lodge had made no complaints and urged no objection to his reports because of the fact that they were not made within the time prescribed by the by-laws. He testified that other members of the Lakeside Camp besides Newsom paid their installments in the same manner.

It was shown that Newsom kept a deposit with the Portland Bank and instructed its cashier to pay the monthly draft with receipt attached of the clerk of the Lakeside Camp, and that the cashier had uniformly and without intermission paid these drafts when presented. That this agreement had extended over a period of two years; that during that time and until the death of Newsom he had on deposit with the Portland Bank a sum sufficient to pay the monthly installment or draft. That other members of the camp paid their monthly dues in the same manner.

The appellee requested the court to instruct the jury to return a verdict in her favor for the sum of $1,000 with 6 per cent. interest from July 4, 1918, which instruction the court granted. The court refused the prayer of

the appellant for instruction to return a verdict in its favor. From the judgment in favor of appellee is this appeal.

The application for membership in appellant order and the certificate issued thereon both expressly refer to the laws, rules, and regulations of appellant and make the certificate null and void if the holder thereof fails to comply with such laws, rules, and regulations.

It is well settled by our own cases, as well as the authorities generally, that the constitution and laws of a mutual benefit fraternal society, such as that of appellant, form the basis of and constitute a part of the contract of insurance. This contract measures the obligations of the members and the liability of the association or governing body. *Block* v. *Valley Mutual Ins. Assoc.,* 52 Ark. 201; *W. O. W.* v. *Jackson,* 80 Ark. 419; *Supreme Lodge K. & L. of H.* v. *Jackson,* 81 Ark. 512; *W. O. W.* v. *Hall,* 104 Ark. 538; *Supreme Royal Circle* v. *Morrison,* 105 Ark. 140-43; *Grand Lodge A. O. U. W.* v. *Davidson,* 127 Ark. 133; see also *W. O. W.* v. *Anderson,* 133 Ark. 411; *United Assurance Assn.* v. *Frederick,* 130 Ark. 12-15; *Baker* v. *Mosaic Templars of America,* 135 Ark. 65; *Sovereign Camp W. O. W.* v. *Compton,* 140 Ark. 313. In 1st Bacon on Benefit Societies, section 80, it is said: ''The constitution, rules, and by-laws of a voluntary association is a contract between the members.''

Therefore, if Newsom failed to pay the dues for the month of March to the clerk of the Lakeside Camp, the local camp of appellant, as provided in its constitution and laws, he thereby automatically became suspended from the order and his policy or certificate was rendered null and void. See *Patterson* v. *Equitable Life Assn.,* 112 Ark. 171-9 and cases cited. Hence the appellant is not liable thereon unless it waived, or is estopped by its conduct from relying on, the forfeiture.

The first question then is, were the dues paid for the month of March so far as the insured Newsom was concerned, or, to state the question in another form, was

the appellant estopped by its conduct to deny that New-sum's dues were paid?

Under the laws of the association it was the duty of the clerk of the local camp to collect the monthly assessments or **dues and** to forward these and all other funds to the clerk of the Sovereign Camp on or before the fifth day of every month. This he could do by money order or bank draft with exchange payable to the order of the Sovereign Banker. It was the duty of the clerk of the local camp to forward with his remittances, upon blanks furnished him for that purpose by the Sovereign Camp, a detailed statement of the standing of the members for the information of the Sovereign Clerk. Upon the failure of the local clerk to thus remit the funds, the Sovereign Commander had the right to declare the office vacant and to require the election of his successor. If the clerk knowingly failed to discharge his duty in this respect, the Sovereign Commander also had the power to suspend him from office. *Trotter* v. *Grand Lodge of Iowa of Honor,* 132 Iowa 513; Amer. & Eng. Ann. Cas., vol. 11, p. 533, is a case quite similar in its facts to the case under consideration. The opinion contains a thorough discussion of issues like the ones here involved. The opinion and the case note are an elaborate review of the authorities. The reasoning of the opinion and the conclusions there reached meet with our unqualified approval. In the course of the opinion in that case we find the following: "The authorities are substantially unanimous that in schemes of cooperative life insurance in which the authority to issue benefit certificates, prescribe terms of membership and levy assessments, is vested in a grand or supreme lodge or council or other central governing body, which central body exercises jurisdiction over local lodges or societies through which the membership is recruited and by the officers of which assessments are collected and remitted, the local organization and its officers to whom the duty of making such collection is committed are to be considered the agents of the governing body. That this agency is subject to the operation of the ordinary rules

applicable to agencies of the same general character in the business of ordinary life insurance is also well settled.''

In *Supreme Lodge K. of H. v. Davis,* 26 Colo. 252, it is held: ''In a mutual benevolent order composed of a supreme lodge and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the supreme lodge for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the supreme lodge such assessments, is an agent of the supreme lodge, notwithstanding a rule or by-law of the order recites that such officer in collecting or forwarding assessments shall be the agent of the members of the subordinate lodge, and the supreme lodge is charged with all knowledge possessed by the agent in making the collection.''

This is a sound doctrine and according to it the clerk of the local camp of appellant, under the laws of its order, was, in the manner of making collection of assessments and remittances and reports to the Sovereign Clerk, the agent of appellant.

For about ten years Newsom was a member of Lakeside Camp of appellant. He resided at Portland and arranged with the clerk of the local camp to pay his dues in the following manner: The clerk was to make a monthly draft on the Bank of Portland, with receipt attached, for the amount of Newsom's dues. Newsom kept on deposit with said bank a sum sufficient to pay these drafts and instructed its cashier to honor the drafts made by the clerk of Lakeside Camp for these dues, which the cashier invariably did. It was the custom of the clerk under this arrangement to collect the monthly dues of Newsom and other members in this manner, but the clerk failed to collect the dues for March for the reason, as he states, that before he made his monthly collection and report for that month Newsom died, and he was under the impression that Mrs. Newsom, after the death of Newsom, had sent the money and had received credit for the

dues by the Sovereign Camp in the deduction statement which they rendered him for her to sign.

There is no law of appellant making the clerk of the local camp the agent of the members in the matter of complying with the regulations of appellant relating to the collection of the assessments for the benefit fund.

It will be observed, too, that the clerk of the local camp in making his monthly remittances had something more to do than merely state the amount collected from the members. He had also to report the standing of the members for the information of the Sovereign Clerk.

Since the clerk of the local camp must be regarded as the agent of the Sovereign Camp in the matter of collecting assessments and reporting the standing of the members to the Sovereign Clerk, the knowledge of the agent acquired in the discharge of his duties was the knowledge of appellant. Appellant, therefore, must be held to have known that when the time came for the payment of Newsom's dues for the month of March he had on deposit in the Bank of Portland funds with which to pay such dues and that such assessment would have been promptly paid at the time same was due but for the neglect and fault of appellant's own clerk and agent in collecting the same according to the method and custom which the agent had adopted in collecting or receiving the payment of dues and making his reports.

It appears from the undisputed facts of this record that money was on deposit in the Bank of Portland for the purpose of paying the assessments of Newsom at the time when they became due under the laws of appellant. The laws of the order nowhere prescribe the method which the clerk should pursue in collecting the assessments. That was left entirely with him, and he adopted the method of collecting same, as we have shown, by draft, with his receipt attached, on the bank where the money was deposited to pay the same. He also adopted (for his own convenience, not Newsom's) the custom of making his remittances and report after the fifth of each month. It occurs to us that the case is precisely the same

in legal effect as if Newsom had tendered to the agent of the appellant, duly authorized to collect monthly assessments, the amount of such assessment at the time the same was due and that the agent failed or refused, for some reason, no matter what, to receive the same and report to his principal, as was his duty to do on the fifth of each month.

In *Royal Circle of Friends of the World* v. *Paine,* 103 Ark. 171, we held that, "Where a member of a mutual benefit association tenders his dues or assessment to the proper officer of the association and the tender is refused there can be no forfeiture of his rights for non-payment of his dues or assessments."

As we view the facts, it must be held as a matter of law that so far as Newsom was concerned he had paid his March dues, which is but another way of saying that the appellant is estopped by the conduct of its duly authorized agent acting within the scope of his authority from asserting that such assessment was not paid.

Counsel for appellant quote in their brief from *Woodmen of the World* v. *Hall,* 104 Ark. 538-44, as follows: "But it is well settled by the weight of authority that the officers and subordinate lodges of a mutual benefit association have no authority to waive the provisions of its by-laws and constitution relating to the substance of the contract between the applicant and the association." This language has since also been quoted with approval in *Clinton* v. *Modern Woodmen of America,* 125 Ark. 115-19, and in *Pate* v. *Modern Woodmen of America,* 129 Ark. 159-62.

Counsel for appellant contend that under the doctrine of these cases the subordinate lodges and the officers thereof have no authority to waive the forfeiture of an insurance policy held by a member of a benefit association where such forfeiture is caused by a failure of the member to pay his monthly assessments as provided by the by-laws and constitution of the association; that the association is not estopped by the conduct of the subor-

dinate lodges and the officers thereof from setting up the forfeiture in defense of an action on the policy.

In *Woodmen of the World* v. *Hall,* and *Modern Woodmen of America* v. *Clinton, supra,* the element of estoppel by a settled course of conduct on the part of the local clerk to collect and remit assessments after they were due did not enter into the consideration and determination of those cases. They are easily distinguished from the present case on the facts, and the language above quoted was not necessary to the conclusion there reached. However, in *Pate* v. *Modern Woodmen of America,* the decision was bottomed squarely upon the language above quoted from *Woodmen of the World* v. *Hall.*

It has never been the policy of this court to intentionally overrule its former decisions by indirection. Therefore it is certain that this court did not intend by the language above quoted to overrule the doctrine announced before, and many times since, the decision in *Woodmen of the World* v. *Hall, supra,* was rendered, to the effect that, in the absence of some statute making a distinction between them, the insurance certificate issued by benefit societies to their members, so far as the insurance features are concerned, must be regarded the same as any other ordinary policy or contract of insurance issued by companies engaged in that business. Such companies, whether they be fraternal and benevolent benefit societies or "old line" insurance companies, can only transact the business of insurance through agents. The duties, obligations, and liabilities growing out of these contracts must be governed by the general laws of principal and agent as relating to such contracts. See *Block* v. *V. M. Ins. Assoc.,* 52 Ark. 201; *Johnson* v. *Hall,* 55 Ark. 210-12; *Carruth* v. *Clawson,* 97 Ark. 50; *Peebles* v. *Columbian Woodmen,* 111 Ark. 435; *Grand Lodge A. O. U. W.* v. *Davidson,* 127 Ark. 133.

In *Peebles* v. *Columbian Woodmen, supra,* we said: "For the reason that an insurance corporation can only act through its officers and agents, the company and its

officers and agents are in law one and the same as to all transactions within the scope of the authority of its officers and agents. Therefore, it has been generally held in this State that the knowledge acquired by the agent when in the discharge of his duties as to matters within the scope of his agency will be imputed to the principal."

In *Grand Lodge A. O. U. W.* v. *Davidson, supra,* we said: "There is no difference between this contract and any other contract. Individuals and business corporations can waive favorable provisions in their contracts, and there is no reason why fraternal organizations should not be permitted to waive forfeiture in their contracts."

But the language above quoted from *Woodmen of the World* v. *Hall* is susceptible of the construction that in no case, and under no circumstances, can the officers and subordinate lodges of a mutual benefit association waive a forfeiture of a certificate or policy that has accrued under the by-laws and constitution of the association. Such, indeed, as we have seen, was the construction given it in *Pate* v. *Modern Woodmen of America, supra.* When thus construed, the language is too broad and brings our decisions into conflict. It commits this court to what we now conceive to be an unsound doctrine, and therefore we hereby expressly disapprove it, and the cases in which the above language is quoted and relied on are to that extent overruled. The language should be qualified by saying that the officers and subordinate lodges of a mutual benefit association have no authority to waive the provisions of its by-laws and constitution which relate to the substance of the contract between the insured member and the association unless, in those matters pertaining to the contract, they are the authorized agents of the association and, in what they do, are acting within the scope of their authority.

Two reasons are usually given for holding that subordinate lodges and officers of a fraternal benefit society cannot waive a forfeiture, or by their conduct estop the association from claiming a forfeiture in defense to an

action based on a policy of the association where such forfeiture was caused by a failure of the insured to pay the monthly dues or assessments in accordance with the constitution and laws of the association. These reasons are as follows: First, because the members of the association are conclusively presumed to have knowledge of the constitution and laws of the association which enter into the contract. Second, because a strict compliance by the members with the laws of the association with reference to the prompt payment of dues is essential to the life of the association. These reasons do not appeal to us as sufficient to differentiate insurance contracts of fraternal societies from the ordinary contracts of insurance issued by stock (old line) companies, or to subject the former to different rules from the latter concerning the doctrine of agency and of waiver and estoppel.

In the first place all ordinary policies of insurance issued by "old line" companies usually contain provisions expressly prohibiting certain agents from waiving a forfeiture and providing that those companies shall not be estopped by the conduct of their agents from setting up a forfeiture caused by failure of the insured to pay the premiums or to comply with other conditions precedent to a binding contract of insurance. Where these provisions are embraced in ordinary policies of insurance, the insured must take notice of them. They are a part of the contract, and the insured is conclusively presumed to have knowledge of them the same as the holders of certificates in a mutual benefit society are conclusively presumed to have knowledge of its by-laws. So the contention that the forfeiture should be declared in the one case and not in the other, for the reason stated, is unsound. There is in reality no distinction between them.

In the second place, as a matter of policy, looking to the preservation and perpetuity of the association, if there is to be any difference between "old line" and benefit companies in the strictness required in the payment of premiums and assessments in order to keep alive the contract of insurance, the latter companies should be less

strict. It seems to us that it would be far wiser for fraternal and benevolent societies, in cases where the principles of right, justice and good conscience demand it, to exercise more leniency in the enforcement of the assessment payments than would be required or expected, under the same circumstances, of strictly financial companies in the enforcement of premium payments. Such a course would certainly be more in harmony with the object and purpose of the society as expressly declared in section 3 of its constitution and laws. Such purpose should not be overlooked or ignored by the supreme officers in the interpretation and enforcement of the laws of the society.

Forfeitures are not favored. If circumstances exist, such as here revealed, which would render it unconscionable or a legal fraud upon the rights of the insured for an old line company to declare a forfeiture, *a fortiori* would it be a fraud and unconscionable for a fraternal society under the same circumstnaces to declare a forfeiture.

If fraternal organizations cannot be kept alive without perpetrating hardships upon their members which the law does not tolerate in the case of a policy holder in an ordinary insurance company, then fraternal organizations, in so far as their insurance business is concerned, should die. They should not be permitted under the guise of fraternity and benevolence to inveigle unwary members into insurance contracts which are not governed by the same rules of law as any other ordinary contract of insurance.

The question then recurs as to whether or not the clerk of the local camp under the facts of this case was the agent of the Sovereign Camp in the duty of making collections and remittances and making the report of the standing of the members. If he was not the agent of the Sovereign body in these matters, whose agent was he? The Sovereign Camp had the power to suspend or remove him for the derelictions of which he was here shown to be guilty. The individual member had no such power.

Where the interest of the Sovereign body and the individual member conflict, certainly the local clerk could not be considered the agent of both.

We have already determined the question in the affirmative, and we believe there is no other correct solution of it. Being the agent of the Sovereign Camp, and, as we have seen, acting within the scope of his authority and in the line of his duty, the law applicable to agents, and of waiver and estoppel as in other ordinary cases of insurance must apply in this case.

Counsel for appellant contend that the case is ruled on the question of waiver and estoppel not only by *Woodmen of the World* v. *Hall, supra,* and other cases of our own court cited by them, but they earnestly invite our attention to the case of *Modern Woodmen of America* v. *Tevis,* 117 Fed. 368. That case in its essential facts is precisely similar to the facts in the case at bar except that in the Tevis case there was a provision in the bylaws making the clerk of the local camp the agent of that camp and not of the head camp.

The Tevis case first came before the Circuit Court of Appeals of the 8th Circuit when that court was composed of Judges Caldwell, Thayer, and Sanborn. That court then decided, Mr. Justice Sanborn delivering the opinion of the court, that the clerk of the local camp was the agent of the governing body to collect and remit assessments and to report the collections, delinquencies, etc., and that the society was estopped by the conduct of its agent from enforcing a forfeiture for default in prompt payment of dues. The exact question we now have under consideration was decided by that court as we are now deciding it. See *M. W. O. A.* v. *Tevis et al.,* 111 Fed. 113-19, 49 C. C. A. 256.

A rehearing was asked and while same was pending the Supreme Court of the United States in *Northern Assurance Company* v. *Grand View Bldg. Assoc.,* 183 U. S. 308, 46 L. Ed. 313, decided, among other things, that the written contracts of insurance, if unambiguous, must speak for themselves and cannot be altered or contra-

dicted by parol evidence unless in the case of fraud or mutual mistake of facts; that ''it is competent and reasonable for the insurance companies to make it a matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered.''

After the decision of the United States Supreme Court, the Circuit Court of Appeals of the 8th Circuit, composed of the same judges who made the former decision in the Tevis case, *supra,* granted a rehearing and decided that the decision of the United States Supreme Court in *Northern Assurance Co.* v. *Grand V. Bldg. Assn.,* was an authoritative determination of the question at issue in the Tevis case and that they were bound by that decision. Therefore, the Circuit Court of Appeals, through Judge Sanborn, held in effect that benefit societies may limit the authority of their agents, and that when they do so the latter cannot bind their principal by contract, estoppel or waiver, to those who know the limitations upon their power and that the insured and their beneficiaries under contracts with benefit societies are charged with knowledge of the limitations upon the power of the agents which are found in the policies or certificates and in the by-laws or applications which are a part of their contracts, and are bound by those limitations.

But this court, except where Federal questions are involved, is not bound by the decisions of the Supreme Court of the United States. Therefore, after the decision of that court in *Northern Assurance Company* v. *Grand View Bldg Assn., supra,* this court, in *People's Fire Ins. Assn.* v. *Goyne,* 79 Ark. 315, after an elaborate review of our own decisions in the light of the above decision of the Supreme Court of the United States and other authorities, deliberately repudiated the doctrine of the Supreme Court of the United States as announced in *Northern Assurance Co.* v. *Grand View Bldg. Assn.,* and held that the doctrine on the subject which had been pre-

viously announced by this court in *Insurance Company* v. *Brodie,* 52 Ark. 11, was sound.

In the Brodie case we held that an insurance company "may, at any time it sees fit, give authority to any agent to make agreements or to waive forfeitures;" that "it is not bound to act upon the declaration in its policy that they had not such authority;" that "the waiver is provable by either written or oral evidence, notwithstanding a declaration in the policy to the contrary."

In the case of *Fire Ins. Co.* v. *Goyne, supra,* we held that an insurance company may be estopped by the conduct of its agent acting in the apparent or real scope of his authority, notwithstanding clauses in the application or policy providing that it shall not be bound by any such conduct of its agent. That "when an agent does anything within the real or apparent scope of his authority, it is as much the act of the principal as if done by the principal himself."

The doctrine as to waiver and estoppel as announced by the Circuit Court of Appeals in the first opinion in *Modern Woodmen of America* v. *Tevis,* 111 Fed., *supra,* is correct and in conformity with our own decisions on the subject, whereas the doctrine announced in the same case, 117 Fed., *supra,* is not the law on that subject, and is contrary to numerous decisions of this court. An examination of the last case will discover that the court correctly held under the facts that the clerk of the local camp was the agent of the sovereign body and not of the local camp, and in this respect did not change its former holding.

The doctrine of the Brodie and Goyne cases, *supra,* has been reiterated in numerous cases since they were rendered and has never been overruled or impaired, except by the language used in *W. O. W.* v. *Hall, supra,* and that language, as we have already stated, as to waiver and estoppel under facts similar to those here presented, we expressly disapprove and overrule.

Having reached the conclusion that the clerk of the local camp was the agent of appellant and acting within the scope of his authority in making collections, remit-

tances, and reports to the sovereign clerk, it is manifest that appellant is estopped by the conduct of the local clerk from claiming a forfeiture of Newsom's policy or certificate under the undisputed facts above set forth. The law applicable to such a state of facts is accurately stated in case note to *Trotter* v. *Grand Lodge,* 132 Ark. 541: "Where a mutual benefit association has in repeated instances received from a member the payment of overdue assessments so as to establish a custom or course of dealing between the parties and lead the member to believe that a strict observance of a requirement as to the time of payment is not required, it is held that the certificate of insurance is not forfeited by failure to pay an assessment at the time when the by-laws of the society or a stipulation in the certificate requires it to be paid and that a provision for forfeiture for non-payment at such time is waived within the customary period of extension of the time of payment." Numerous cases are cited to support the text. Other strong cases to the same effect are *Edmiston* v. *The Homesteaders,* 93 Kan. 485, Ann. Cases 1916 D 588; *Head Camp* v. *Bohanna,* 59 Col. 545, 151 Pac. App. 1. The above doctrine in substance has been also repeatedly announced by this court. See *German Ins. Co.* v. *Gibson,* 53 Ark. 499; *Pac. Mutual Life Ins. Co.* v. *Walker,* 67 Ark. 147-53; *Peebles* v. *Columbian Woodmen,* 111 Ark. 431, *supra; Grand Lodge A. O. U. W.* v. *Davidson,* 127 Ark. 133-38; *Interstate B. M. A. Assn.* v. *Greene,* 132 Ark. 546-49, and cases cited.

The judgment, therefore, is correct and it is affirmed.

McCulloch, C. J., and Smith, J., dissent.

Wood, J. (on rehearing). Our attention for the first time is called to section 20 of act 462 of the Acts of 1917, which reads as follows:

"The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the law and constitution of the society, and the same shall be binding on the

society and each and every member thereof and on all beneficiaries of members.''

Act 462 is an act ''pertaining to the regulation and incorporation of fraternal beneficiary associations, societies, or orders and other matters pertaining thereto.'' The act is exceedingly comprehensive, and embraces within its terms both domestic and foreign fraternal beneficiary associations, societies, or orders, where its provisions, either by express reference or because of the character of such provisions, are alike applicable to both.

In *Acree* v. *Whitley,* 136 Ark. 149, we held that a foreign fraternal benefit society coming within the definition of a fraternal society as set forth in the first section of the act was not subject to garnishment under section 21 of the act. We, therefore, held in the above case that section 21 of the act was applicable to foreign societies. In that case the society against which the writ of garnishment was directed was an Indiana organization. If section 21 is applicable to foreign societies, then section 20 is also applicable to such societies.

Section 20 is couched in general terms which are applicable to foreign as well to domestic societies, and we therefore hold that such section is applicable to the appellant in this case. This would have been our holding in the original opinion if our attention had been drawn to the statute. The appellant, however, did not in the court below, nor in the elaborate brief filed by its counsel in this court, direct our attention to this provision of the statute, and we overlooked it. It is a part, however, of the statute law governing fraternal societies and must be given full force and effect in the final decision of causes to which it is applicable. Therefore, what we said in the original opinion concerning the authority of a subordinate body and its subordinate officers to waive any of the provisions of the laws and constitution of the society is retracted, and we now hold, in view of this statute, that it was not within the power of the local clerk of appellant to waive the payment of the March dues on or before the first day of April as required by the law

and constitution of appellant. This provision of appellant's laws and constitution under the provisions of section 20 of act 462, *supra,* was binding on the society and its members and the beneficiaries of members. The certificate in suit is an Arkansas contract, and is governed by the above statute.

This conclusion, however, does not change the result of our former holding, nor what we declared in the original opinion concerning the authority of the clerk of the subordinate lodge acting within the scope of his authority to bind appellant by his conduct, and to estop it from asserting a forfeiture of the policy. The well established rules of law applicable to principal and agent would estop appellant from denying, under the circumstances, that the dues for the month of March had been paid. It will be observed that the language of section 20 is a limitation upon the authority of the subordinate body and the subordinate officers or members to *waive* any of the provisions of the law and constitution of the society. The language can not be extended to cover cases of estoppel where the society by a settled course of conduct on the part of its agent acting within the scope of his authority, has misled the member to his prejudice. Where such is the case, the society is liable not on the ground of waiver but on the ground of estoppel.

"A waiver is an intentional abandonment or relinquishment of a known right." Words and Phrases, p. 1222; 29 Am. & Eng. Enc. of Law, p. 1091; also see 40 Cyc., p. 255 "C" and cases there cited; Law of Waiver, Bowers, sec. 1, p. 19. "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." 2 Pomeroy's Eq. Jur., sec. 804; Words and

Phrases, p. 336. These terms, "waiver" and "estoppel," though often used interchangeably with reference to insurance contracts, are really distinguishable and that distinction must be observed in construing the language of section 20.

An illuminating case showing the distinction between waiver and estoppel is that of *Sovereign Camp Woodmen of the World* v. *Putnam,* 206 S. W. 970-2. In that case the Court of Civil Appeals of Texas had under consideration a section of the laws and constitution of this same order, similar to the section under review here. Special Judge Chilton, in an able opinion, voicing the unanimous decision of the court, among other things, says:

(3) "The terms, 'waiver' and 'estoppel,' are often used indifferently in the same sense as if they were interchangeable terms; but there is a distinction which it is often important to keep in mind. Waiver presupposes a full knowledge of a right existing and an intentional surrender or relinquishment of that right. It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and provisions of a contract; but not so with estoppel.

"Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; an estoppel may arise where there is no intention to mislead. * * * Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice, or into an altered position; an estoppel always involves this element. * * * Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy." 40 Cyc., pp. 256, 257.

(4) "The principle of estoppel in equity stands upon the very foundation of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate. A fraternal insurance association, such as appellant, is as much subject to the operation of its principles as any other association of persons or as an individual." See also *Libbey* v. *Haley,* 91 Me. 331, 39 Atl. 104.

In 2nd May on Insurance, section 361, it is said that, "Forfeitures are so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties. If the practice of the company and its course of dealings with the insured and others known to the insured have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such a forfeiture, as against one in whom their conduct has induced such belief."

This doctrine of equitable estoppel is as applicable to fraternal societies as to old line companies.

Now here there was something more than a single act of the local clerk in not collecting the dues of Newsom on or before the first of each month. The clerk through a period of years had adopted the method set forth in the original opinion which was clearly calculated to induce the belief upon the part of Newsom that his dues had been paid according to the method adopted by the local clerk for collecting the dues and reporting the same, and that the society had accepted such payments and would, therefore, not insist upon a forfeiture because of the failure of the clerk to comply, in this respect, with its laws and constitution. This conduct of appellant's agent under the authorities above cited clearly estops appellant from denying that the March dues were paid as required.

The above case of *Sovereign Camp Woodmen of the World* v. *Putnam* is also excellent authority for the doc-

trine announced in the original opinion that the local camp clerk, in the matter of collecting the assessments and dues, the reporting of same, and the standing of members, was the agent of the sovereign camp. To the same effect, see *Knights of Maccabees of the World* v. *Johnson,* 185 Pac. Rep. 82; *Modern Woodmen of America* v. *Asa Colman,* 64 Neb. 162, 89 N. W. 641; *Grand Lodge of United Brothers of Friendship and Sisters of the Mysterious Ten* v. *Carroll,* 174 Pac. (Okla.) 767.

The motion for rehearing is therefore overruled.