**KISTLER et al. v. GINGLES et al.**

Civ. No. 729.

United States District Court
W. D. Arkansas.
Fort Smith Division.

Jan. 30, 1950.

10

Bruce H. Shaw (of Hardin, Barton & Shaw), Fort Smith, Ark., Roy Frye (of Frye & Patterson), Sallisaw, Okl., for plaintiffs.

Cecil R. Warner (of Warner & Warner), Fort Smith, Ark., Ernest Briner, Benton, Ark., for defendants.

JOHN E. MILLER, District Judge.

The history of this litigation may be briefly summarized as follows.

Complaint was filed August 7, 1947, by plaintiffs, Ralph P. Kistler, R. P. Kistler, Daisy M. Kistler and R. P. Kistler, Jr., doing business as R. P. Kistler and Sons, against defendant H. F. McMahon individually and defendants H. F. McMahon, H. J. Gingles and H. W. Anderson, partners, doing business under the name of Rock Island Coal Company, to recover from each of them the unpaid rentals in the sum of $12,500.00, with interest thereon from April 23, 1947, and $2,604.16, with interest from July 7, 1947, at 6%, under a certain coal mining lease, and the sum of $5,000.00 as damages for the failure of defendants to return the mine in a workable condition.

On November 20, 1947, defendants, Gingles and Anderson, filed their answer which was in effect a general denial. By amended answer filed December 18, 1947, defendants, Gingles and Anderson, asserted as a complete defense that there at no time existed a general partnership between the defendants but that it was in fact a limited partnership, duly organized under the Limited Partnership Act of Arkansas, and by virtue thereof they were liable only to the extent of their original contribution and were not liable to these plaintiffs. By amendment to amended answer filed January 24, 1948, defendants, Gingles and Anderson, asserted that plaintiffs had waived any right to hold

defendants liable as general partners, and by plaintiffs' acts the latter were estopped to claim that defendants were liable as general partners. The cause was tried to the court on February 25, 26 and 27, 1948. At that time counsel for the plaintiffs waived their second cause of action set forth in the complaint (the claim for $5,000.00 damages to the mine). At the conclusion of that trial the court filed its findings of fact and conclusions of law, separately stated. Judgment was entered based thereon holding that defendants, Gingles and Anderson, were not liable to the plaintiffs as general partners, having substantially complied with the Arkansas law pertaining to the formation of limited partnerships, and the complaint of plaintiffs was dismissed as to those defendants. Judgment was rendered against defendant H. F. McMahon for the total sum of $15,854.53 and costs.

The court at that time did not pass specifically on defendants' defense of waiver and estoppel, but did make the following findings of fact that pertain thereto. Finding of Fact No. 17 reads as follows: "The plaintiff, R. P. Kistler, had actual notice of the existence of the limited partnership and was sent by the partnership to Washington, D. C., in early January, 1946, for the purpose of obtaining the approval of the application of the partnership for a loan from the Smaller War Plants Corporation as a limited partnership. At the time the plaintiff Kistler was sent to Washington, D. C., he knew that the Smaller War Plants Corporation had required as a condition of making the loan that all of the defendants be bound jointly and severally, and further knew that the said corporation was requiring some additional action relative to the original lease that Kistler had obtained from the Choctaw and Chickasaw Indians. As one of the results of the trip by the plaintiff, R. P. Kistler, to Washington, D. C., an amended application for a loan of $60,000.00 was approved without requiring the signatures of the defendants Gingles and Anderson, but notwithstanding the waiver of such requirement the loan was not consummated. In all dealings of the plaintiff R. P. Kistler with the Rock Island Coal Co., the defendants, Gingles and Anderson, never at any time represented that they were general partners or that their liability was other than as outlined in the partnership agreement."

Finding of Fact No. 18 reads:

"Defendants, H. J. Gingles and H. W. Anderson, did not, for themselves, or either of them, by word spoken or written, or by conduct, represent either as a general partner to anyone, nor consented to any other person representing either to anyone, as such general partner, in an existing general partnership.

"Plaintiffs did not give credit or sustain injury on the faith of any representation that the defendants, or either of them, were general partners."

The plaintiff appealed and the Court of Appeals for the Eighth Circuit held: "They (Gingles and Anderson) simply did not comply with the statute and the conclusion that they had substantially complied was erroneous. It may not be sustained." Kistler et al. v. Gingles et al., 171 F.2d 912, 915.

The judgment as to defendants, Gingles and Anderson, was reversed and the case remanded.

It was urged before the Court of Appeals that the court could affirm on the waiver and estoppel contention even though this court did not pass specifically thereon, but in refusing to so do, the Court of Appeals stated, 171 F.2d at page 915:

"It is contended for appellees however that even if the judgment may not be sustained on the ground upon which the trial court rendered it, it should nevertheless be affirmed on the ground that the evidence and the findings of the trial court supported by evidence established that Kistler had with full knowledge waived any right to assert and was estopped to assert against Gingles and Anderson the claim that they were general partners of Rock Island Coal Company or liable as such for the unpaid rent.

"We do not doubt the power of this court to refuse to reverse a judgment of the trial court which settles the rights of the parties according to law, notwithstand-

ing the trial court may have assigned erroneous reasons for the judgment. But we are not persuaded that this case presents appropriate occasion for the exercise of that power. It is clear that plaintiffs' partnership throughout the transactions involved was represented by and acted through Ralph P. Kistler, and his knowledge of Rock Island Coal Company and the relations of Gingles and Anderson to it, as well as his transactions with it and with them, were imputable to the plaintiffs, but there are no sufficient findings of fact by the trial court to present the issues of waiver or estoppel for decision here as matter of law, and in respect to those issues we are left to infer the facts from the voluminous record."

The appellate court set forth in its opinion the provisions of the Limited Partnership Act, Ark.Stats. (1947) Sec. 65-209, relied upon by plaintiffs for recovery, " * * * and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof, as general partners", and made the following comment in regard thereto: "That section, it appears, has not been considered by the Supreme Court of Arkansas in relation to issues of waiver or estoppel, so that to determine such issues here this court would be required to make original declaration both of the law of Arkansas which controls on these issues in the case, and also original findings of the facts to be inferred from the evidence. That is beyond the function of the appellate court in the situation presented."

After the case was remanded, the attorneys for the parties entered into the following stipulation, filed October 12, 1949:

"It is stipulated and agreed by and between counsel of the respective parties hereto that said cause shall be tried, heard and finally submitted to the court, jury being waived, upon the record herein, of the first trial of said cause, as prepared and filed in the United States Court of Appeals, Eighth Circuit, upon appeal, and the same may be considered and treated as containing all the evidence in said cause, to the same effect and extent as if the evidence were presented anew to the court at a trial herein.

"It is further stipulated that the plaintiffs' cause herein is limited to the allegations of the first cause of action in said complaint, the second cause alleged therein being waived and dismissed by plaintiffs; and, subject to all defenses herein, that if judgment be rendered in favor of plaintiffs against said defendants, H. J. Gingles and H. W. Anderson, it shall be in the amount alleged in said first cause of action of the complaint.

"It is further stipulated that said defendants did not take or remove from said mine or leased premises, or sell or otherwise dispose of, any property, equipment or machinery that was in said mine or on said leased premises during the existence, or upon termination, of said lease."

The attorneys for the respective parties were granted time within which to abstract the record and submit briefs in support of their contentions, which have been received, and the court is proceeding herein to finally dispose of the case in accordance with this opinion.

Defendants contend that two issues remain open for decision by this court: (1) Did McMahon, Gingles and Anderson organize and form a general partnership known as Rock Island Coal Company as alleged by plaintiffs and denied by defendants? (2) Did plaintiffs waive the right to assert, and are they estopped to assert that defendants are liable as general partners?

Plaintiffs assert that only the second issue, that of waiver and estoppel, is properly before the court at this time, under the mandate of the Court of Appeals, but contend that in any event, it is not their position now and has never been that defendants are general partners. Continuing, plaintiffs urge that the Uniform Partnership Act, Ark.Stats. (1947) Sec. 65-102 et seq., has no place in this case, in that they are insisting upon a recovery under and by virtue of that section of the Limited Partnership Act, Ark.Stats. (1947) Sec. 65-209, reading: " * * *; and if any false

statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof, as general partners."

The Court of Appeals has determined that a false statement was made, Kistler et al. v. Gingles et al., supra, and plaintiffs' assert that it necessarily follows under the unequivocal language of the statute that defendants are *liable as* general partners, and therefore, the only proper question before the court is whether plaintiffs have waived the right given by this statute or have so conducted themselves as to be estopped to assert the right.

This section, 65-209, of the Arkansas Limited Partnership Act has not been construed by the Supreme Court of Arkansas, but the language of the section is plain, and this court sees no alternative but to apply it as written. This seems to have been the result reached by courts dealing with similar statutes in other jurisdictions. Thus, in Abendroth v. Van Dolsen, 131 U.S. 66, 73, 9 S.Ct. 619, 622, 33 L.Ed. 57, the Supreme Court in dealing with an identical provision in the New York Limited Partnership Act, under a factual situation whereby all the requirements of the statute had been strictly complied with except the capital contributed by the special partner was not paid in cash, as stated in the affidavit, but by post-dated check payable eight days after its execution and cashed in ten days from its date, the day after the firm went into business, stated: "This is shown in the opinion of the court, which very properly holds that the statute, in fixing this liability on account of non-compliance with its provisions, does not change his special partnership into a general one, but simply makes him liable as a general partner to creditors. * * * The view presented by the court of appeals of New York upon this point, in the case of Durant v. Abendroth, 97 N.Y. 132, 144, is clear and satisfactory: 'Notwithstanding the erroneous statement in the affidavit as to the payment of the capital, the partnership was, in form, a limited partnership, and subject to all the rules applicable to such partnerships. If it had undertaken to make an assignment with preferences, such assignment could not have been sustained on the ground of the violation of the statute. That violation could be taken advantage of only by creditors, and its consequence simply was to give them recourse against the special partner personally, as if he had been a general partner.' "

Limited partnerships were unknown at common law, and in the beginning such statutes naturally received strict construction, demanding a literal compliance, as is evidenced by the holding in the Abendroth case. In fact, the very language of the section in question reflects this thought, since as a practical matter, all engaged in such an undertaking would have incurred partnership liability to creditors but for the limited partnership act, and a failure to literally comply with the act merely left them in the position that the common law would have placed them in any event. However, defendants contend that this would not be the result under the law of Arkansas as it is now constituted. The Uniform Partnership Act is now in force in Arkansas, under which, by express provision, the rule of construction that statutes in derogation of the common law are to be strictly construed is not applicable to that Act. And, under that Act, "persons who are not partners as to each other are not partners as to third persons." Defendants assert, therefore, that they are not general partners under the Arkansas law, and the fact that they made an abortive attempt to comply with the Limited Partnership Act is immaterial. In support of this contention, they rely on the case of Giles et al. v. Vette et al., 263 U.S. 553, 44 S.Ct. 157, 68 L.Ed. 441, which held that persons who had attempted to form a limited partnership, but had failed to comply with the applicable statute (they complied with the Illinois Limited Partnership Act of 1874, which was superseded by the Uniform Limited Partnership Act in Illinois prior to the effective date of the partnership, and they never complied with the latter Act), were nevertheless not general partners under the Uniform (General) Partnership Act, in effect in Illinois, and since they had made no representations that they were such to the detriment of any third party,

they were not liable as general partners. In reaching this conclusion the Supreme Court made particular reference to that provision of the Uniform Limited Partnership Act pertaining to those who contributed to the capital with the erroneous belief that they were limited partners (this section is set forth subsequently).

▇ The court is of the opinion that under the Arkansas law these defendants are not general partners. Clearly, the intention of all concerned, as expressed by the purported limited partnership instrument, was that they were not to be general partners, and they made no representations nor engaged in a course of conduct which would make them general partners as to these plaintiffs. See: Ark.Stats. (1947) Sec. 65-102 et seq.; Stephens v. Neely, 161 Ark. 114, 255 S.W. 562, 45 A.L.R. 1236; Central States Life Ins. Co. v. Barrow, 190 Ark. 141, 77 S.W.2d 801. However, this determination is not conclusive of the matter.

The Supreme Court in the Giles case, supra, was dealing with the Uniform Limited Partnership Act, which differs materially from the Arkansas Act. In lieu of Sec. 65-209 of the Arkansas Act, the Uniform Act provides: "If the certificate contains a false statement, one who suffers loss by reliance on such statement may hold liable any party to the certificate who knew the statement to be false." Hurd's Ill.Rev.St. 1919, c. 106a, § 50.

And, in addition to excluding the common-law rule of strict construction, the Uniform Act provides: "A person who has contributed to the capital of a business conducted by a person or partnership erroneously beleiving [believing] that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; * * *." Hurd's Ill.Rev.St.1919, c. 106a, § 55.

Furthermore, the court in the Giles case recognized the status of the law prior to the enactment of the Uniform Act, 263 U.S. at page 562, 44 S.Ct. at page 160, 68 L.Ed. 441: "Prior to the taking effect of that act, the courts of Illinois held that at common law all partners were liable without limitation for the debts of the firm, and that, in order to limit such liability, the statute authorizing limited partnerships must be complied with, or all those who associated under it would be liable as general partners. * * * And this is in harmony with decisions elsewhere under statutes similar to the Illinois Act of 1874 (as is the Arkansas Act). These cases illustrate how strictly the common-law rule against limitation of liability was applied, and how far the doctrine of constructive partnership was carried. It was thought that the strictness of the old act and decisions under it impaired the usefulness of limited partnerships as business organizations because of the risk that one contributing capital as a limited partner might be held liable without limitation. The Uniform Limited Partnership Act and the Uniform (General) Partnership Act, passed at the same time, relax the strictness of the rules against limitation of liability. Each provides that the rule that statutes in derogation of the common law are to be strictly construed shall have no application to it, and that the act shall be so interpreted and construed as to effect the general purpose to make uniform the laws of those states which adopt it."

▇ Thus, as the court views it, there exists an anomalous situation in this case by virtue of the present status of the Arkansas law. These defendants are not general partners to each other or as to the plaintiffs, but by virtue of a false statement made in an abortive attempt to create a limited partnership are nevertheless liable as general partners (in the absence of waiver or estoppel on the part of the plaintiffs to be discussed subsequently), even though they acted in complete good faith at all times. This may appear to be putting form above substance, but to hold otherwise the court would have to rewrite this provision of the Arkansas Limited Partnership Act, Sec. 65-209, or hold that it was repealed by implication by the provisions and the spirit of the Uniform (General) Part-

nership Act. The latter act was enacted in 1941 and did not purport to repeal the Limited Partnership Act. Instead, by express provision, Ark.Stats. (1947) Sec. 65-106, it is applicable to the Limited Partnership Act except in so far as the provisions of the latter are inconsistent. This would seem to negate any thought of repeal by implication. However, as a practical matter, it appears that certain provisions of the Limited Partnership Act may have to be construed, there being no binding precedents to the contrary, in the light of the law pertaining to general partnerships as it is now constituted, rather than as it was at the common Law, when the Limited Partnership Act was enacted. Thus, it might well be that certain provisions, such as Sec. 65-210, which provides that the partnership will be deemed general if sufficient publication is not made, and other sections, should be interpreted to mean that it would be deemed general, if such would be the result under the applicable provisions of the Uniform Partnership Act, because obviously the existence of a general partnership is not determined by the type of or extent of publication given the proposed arrangement.

Thus, in this case, defendants contend that such an interpretation should be placed on Sec, 65-209. In other words, defendants contend that the legislature did not intend the language "shall be liable * * * as general partners" as a penalty, particularly where, as here, the parties were in good faith and plaintiffs were not misled to their detriment by reason of the false statement. On the contrary, defendants assert, since they were acting in absolute good faith, the section should be interpreted to impose liability as general partners upon them only if they are general partners under the applicable law, Uniform Partnership Act, with the ultimate result that liability as general partners should be tested under the Uniform Partnership Act as to whether they are in fact general partners, and since they are not, they are not liable as such.

There is merit in defendants' contention, but this court hesitates to place such an interpretation upon the statute. Its province is simply to apply the law of Arkansas as written by the State Legislature and as interpreted by the Supreme Court of Arkansas, which is the proper court to construe ambiguous or conflicting legislation of the State Legislature. However, as stated above, that court has not had an occasion to construe or interpret the section herein involved. Neither has the State Legislature seen fit to adopt the Uniform Limited Partnership Act, which if adopted, would eliminate any apparent inconsistencies, for as pointed out previously herein, the corresponding provision of the Uniform Act differs materially from Sec. 65-209 of the Arkansas Act.

Under these circumstances the court must reject defendants' contention, because Sec. 65-209 of the Limited Partnership Act is not necessarily inconsistent with the conclusion of the court that defendants, Gingles and Anderson, are not general partners under the Uniform Partnership Act, for Sec. 65-209 does not purport to make them general partners, merely making them *liable as* general partners. The court feels that the problem posed by the defendants' contention may be more properly addressed to the Legislature of Arkansas.

This brings the court to a consideration of the second issue raised by defendants, that of waiver and estoppel. Additional and complete findings of fact and conclusions of law, separately stated, necessary to a determination of this issue, have been filed with the Clerk of the Court and reference will be made to such facts only to the extent necessary to a full understanding and determination of the issue.

The material facts pertaining to the issue of waiver and estoppel may be briefly summarized as follows:

In the beginning it may be said that the plaintiff, R. P. Kistler, hereinafter referred to as Kistler, was the agent and representative of all the other plaintiffs in all transactions involved herein, and all knowledge obtained by the said Kistler is imputed to the other plaintiffs, and they are charged therewith. Kistler et al. v. Gingles et al., 8 Cir., 171 F.2d 912. On April 23, 1945, plaintiffs leased to H. F. McMahon a certain coal mine, which the former had leased

from the agent of the Choctaw and Chickasaw Indian Nations. At this time Kistler had never heard of the defendants, Gingles and Anderson, and, of course, did not lease the property with the expectation that such defendants would help finance or be in any way associated with the contemplated operation of the mine by McMahon. Thereafter, McMahon contacted defendants, H. J. Gingles and H. W. Anderson, both from Benton, Arkansas, in an effort to obtain financial backing. The latter were interested and together with McMahon and Kistler made a trip to Tulsa to explore the possibilities of obtaining a Smaller War Plants Corporation loan. Due to the insistence of the manager of that agency's office in Tulsa that they endorse the loan papers personally, a loan was not obtained, because Gingles and Anderson were interested in investing capital, but not in forming a general partnership. It was subsequently decided to form a limited partnership, with which McMahon had had previous experience, and after returning to Benton, said defendants and McMahon proceeded to contact an attorney and executed the papers according to the advice of the attorney in July, 1945. Kistler was fully aware of the contemplated partnership, the extent of the proposed contribution to the capital by each defendant, $20,000.00 each for Gingles and Anderson, and was fully advised after the limited partnership had been formed. Subsequently an attempt was made to secure a loan through the Little Rock office of Smaller War Plants Corporation, and although the loan was approved for $100,000.00, certain conditions were attached, among which was that they, Gingles and Anderson, should sign the note and become personally liable therefor. Also there was a condition that the term of the Indian lease be extended beyond the proposed final payment date of the loan. Kistler was aware of the application for this loan and was aware of the financial difficulties of the limited partnership. Kistler, McMahon, Gingles and Anderson held a conference at Benton the latter part of December, 1945, and it was decided that the loan application would be reduced to $60,-000.00, and that Kistler, who knew the procedure from past experience, would go to Washington, at the expense of the limited partnership, and attempt to get the conditions waived. He did make the trip and was partially successful. The condition calling for personal endorsement was eliminated but the one pertaining to the extension of the Indian lease was not, and as Kistler could not get an extension, the matter of the loan was dropped. Although defendants, Gingles and Anderson, had not paid in full the $20,000.00 subscribed by each to the capital of the limited partnership at the time of the filing of the certificate of such partnership, each had contributed his full $20,000.00 prior to the meeting in Benton, Kistler's trip to Washington, and prior to any default in rental payments. Thereafter, an attempt was made to get a loan from the City National Bank of Fort Smith, Arkansas, but even though Gingles and Anderson finally agreed to sign personally as a last desperate measure to salvage something from their investment, Kistler refused to sign a mortgage covering property that he had leased to McMahon. Kistler had previously expressed a willingness to place this property as security for a loan, but at the time of the loan negotiations with City National Bank informed the parties that his brother had a mortgage on that property. This was the first information that either had as to any such mortgage. After the failure to get this loan, which finally fell through in April, 1946, Gingles and Anderson paid the balance of the rental payment for the year ending April 23, 1946, as a loan to the limited partnership, but the rental from that date until the cancellation of the lease, July 7, 1947, was not paid and is the subject matter of this lawsuit.

Gingles and Anderson never held themselves out as general partners to Kistler or anyone else, and Kistler, who had intimate knowledge of the limited partnership and the affairs thereof at all stages, at all times dealt with and for the defendants as a limited partnership.

In all the defendants, Gingles and Anderson, were out $42,000.00 each, $20,000.00

as contribution to the capital and $22,000.00 in loans. McMahon, as general partner, did valuable development work on the mine (in fact, the work done consisted almost entirely of development work), and the limited partnership purchased and placed on the property machinery and equipment valued at approximately $16,614.54, book value, and $13,591.64, forced sale value, and defendants, Gingles and Anderson, never received any of, nor realized anything from, this property.

The terms "waiver" and "estoppel" are often used interchangeably, perhaps justifiably so, for in many cases the facts warrant the application of either doctrine. However, there are material differences in the essential facts necessary to invoke the doctrines, which must be recognized in order to test the proper application of the doctrines to the facts of a particular case. This distinction is clearly set forth in the case of Sovereign Camp W. O. W. v. Newsom, 142 Ark. 132, 157, 219 S.W. 759, 768, 14 A.L.R. 903:

"Waiver presupposes a full knowledge of a right existing and an intentional surrender or relinquishment of that right. * * It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and provisions of a contract; but not so with estoppel.

" 'Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; and estoppel may arise where there is no intent to mislead. * * * Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice, or into an altered position; an estoppel always involves this element. * * * Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy.' 40 Cyc., pp. 256, 257."

And, as to "waiver", the Supreme Court of Arkansas in Sirmon v. Roberts, 209 Ark. 586, 588, 191 S.W.2d 824, 825, approved the following quotation from Corpus Juris, Vol. 67, pages 290–291: " ' * * * the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits; or such conduct as warrants an inference of the relinquishment of such right, or the intentional doing of an act inconsistent with claiming it. Thus, 'waiver' occurs where one in possession of a right, whether conferred by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it.' "

Plaintiffs earnestly assert that before one can be held to have waived a right or be estopped from asserting a right, that such person must have full and complete knowledge of all the material facts; that the right with which we are concerned is the right to hold defendants liable as general partners because of a false statement in the affidavit filed in connection with the formation of the limited partnership; that the basic material fact is the false statement; that plaintiffs did not have knowledge of the false statement at the time it was made; and that, therefore, they cannot be held to have waived or be estopped to assert the right which arises from that material fact.

Without additional citation of authority, the court agrees with plaintiffs' contention to the extent that knowledge is an essential element to the application of both waiver and estoppel, and particularly is this true in the case of waiver, for there must be a voluntary relinquishment of a known right, but in analyzing the facts a court must be careful not to nullify the doctrine by requiring proof of the existence of this element to an often impossible degree of exactness. Also, in the opinion of the court, it is not fatal to the application of waiver and estoppel in this case that plaintiffs did not have actual knowl-

edge of the falsity of the statement at the time the affidavit was filed. In this regard the evidence does not conclusively show that Kistler had actual knowledge that the full $20,000.00 had not been paid in at the time of the filing of the affidavit so stating. However, the evidence does sufficiently show, either directly or by reasonable inference from all the facts, that he obtained this knowledge, and also, knowledge that the $20,000.00 was actually paid in full by December, 1945, prior to any default in the payment of rentals or to the accrual of any rentals for which there was later a default, and that he engaged in conduct, after obtaining this knowledge, in a manner inconsistent with the right to hold defendants, Gingles and Anderson, liable as general partners.

Kistler was fully advised of all details of the financial difficulties encountered in operating the mine, and actively assisted the defendants in their efforts to obtain a loan. He knew that the defendants were near the end of their financial string, and that they, Gingles and Anderson, had advanced additional sums to the limited partnership as loans to enable it to carry on operations while efforts were being made to secure outside loans. Certainly, he was aware of the fact that temporary loans, upon the personal endorsement of defendants, had been secured from the City National Bank pending approval of the anticipated loan from that Bank. He knew that necessary development work was being done on the mine and that machinery was being purchased and placed there, principally financed by Gingles and Anderson, through their contributions to the capital and the additional loans, and with the expectation by them of receiving an outside loan. Kistler had led them to believe that he would cooperate fully with them in this regard, and apparently did so for some time, but after having previously advised them of his willingness to pledge the property owned by plaintiffs at the mine, he refused to do so, and was responsible for the failure of the defendants to obtain the City National Bank loan. The demands of the Bank were reasonable under the circumstances, and whether or not Kistler's refusal was in itself justifiable from a business point of view, it certainly was not justifiable from the stand point of fair dealing. He led defendants to believe that he would cooperate in placing the mine in operation and as evidence of the good faith of defendants and their reliance upon Kistler's acts and conduct, they not only advanced their subscribed capital but used their credit to pour into the mine $44,000.00 additional in development work. Kistler knew that the defendants had gone as far as they could, and apparently he came to the conclusion that these defendants would expend no more money in the development of his mine, and therefore, he cancelled the lease and decided he would try to extract further money from them by seeking to hold them liable as general partners, when he knew and had dealt with them at all times as limited partners.

Under these facts, the court feels justified in invoking the doctrine of waiver, as well as estoppel, against the plaintiffs.

As to the doctrine of estoppel the court feels that its decision rests on even sounder footing. The underlying principle of this doctrine is aptly stated by the Supreme Court of Arkansas in Sovereign Camp W. O. W. v. Newsom, supra, 142 Ark. at page 158, 219 S.W. at page 768, 14 A.L.R. 903: " 'The principle of estoppel in equity stands upon the very foundation of right and fair dealing. It considers and weighs the conduct of men in their dealings with each other, and gives that effect and meaning to their actions which common sense and justice dictate. * * *.' "

The Supreme Court of Arkansas stated in Thompson v. Wilhite, Admr., 131 Ark. 77, 82, 198 S.W. 271, 272: "An estoppel in pais is conduct intended and calculated to induce, and in fact inducing, another person to alter his condition so that it would be a fraud on him to allow the other person to take an inconsistent attitude to his detriment."

Kistler had a personal interest in the successful operation of the mine by defendants, since the lease to McMahon called for a very substantial minimum royalty payment. From the beginning he pledged

his full cooperation in attempts to secure a loan, and did advise with and personally assist defendants in their efforts. Kistler knew that defendants would have to have a loan, and knew that their contributions to the capital would not be sufficient to place this mine in operation. He dealt with and for them as limited partners at all times. All expenditures made by defendants for development work, machinery and expenses were in anticipation of outside backing, which efforts were thwarted by Kistler in the last major attempt to secure financial backing, the City National Bank loan. In all, defendants expended $84,000.00, the major portion of which went into the mine in the form of development work and machinery. Under such circumstances it would amount to a virtual fraud on defendants to allow plaintiffs to hold defendants liable as general partners.

The intimate dealings between defendants and Kistler, practically to the extent of a partner and radically different from the normal relationship between a partnership, limited or general, and a third party or creditor; Kistler's knowledge of the affairs of the partnership, as hereinbefore set forth; Kistler's conduct, as hereinbefore set forth; and defendants' reliance thereon to their detriment, as hereinbefore set forth; furnish factual support, and in fact, require, the invocation of the doctrine of estoppel.

Therefore, as the court views the facts of this case, the desired ends of justice, right and fair dealing are more nearly realized by holding that the plaintiffs are estopped to assert any right that they might otherwise have had under Ark.Stats. (1947) Sec. 65-209.

The court does not view this determination on the issues of waiver and estoppel as being in any manner inconsistent with its conclusion on the first issue raised by defendants, because, as previously pointed out, Kistler's relationship with this limited partnership was not the normal one existing with a third party or creditor. While mere knowledge, actual or constructive, of the attempted formation of the limited partnership, and normal dealings with the parties as limited partners, might not be

sufficient to estop one from asserting the right granted by Sec. 65-209, the court is of the opinion that the peculiar facts of this case, are more than ample to justify waiver and estoppel.

Judgment will be entered in accordance with the above, dismissing the plaintiffs' complaint as to the defendants, Gingles and Anderson, at the cost of plaintiffs.