**MOSS v. MOSSER.**
**No. 2054.**

United States District Court,
E. D. Arkansas, W. D.
July 16, 1953.

D. D. Panich, Little Rock, Ark., for plaintiff.

Rose, Meek, House, Barron & Nash, Little Rock, Ark., for intervenor.

TRIMBLE, Chief Judge.

This case has once been before the United States Court of Appeals, for the Eighth Circuit. The opinion of the court is reported as May v. Moss, 194 F. 2d 133. In its opinion the court made certain pronouncements which are now the law of this case. At page 137 of 194 F.2d that court said:

> "Having jurisdiction of the action the court had power to enter the consent decree of May 23, 1950, vesting title to the lands in controversy in the trustee subject to a lien in favor of Mosser and to Mosser's obligation to convey the property to May. The intervention of May and the various orders of the court extending May's time to complete the purchase from the trustee were within the court's discretion. The consent decree of May 23, 1950, until reversed or vacated in the manner provided by law is conclusive upon the parties.

> "A consent judgment has the same force and effect as any other judgment until set aside in the manner provided by law. Woods Bros. Const. Co. v. Yankton County, S. D., 8 Cir., 54 Fed.2d 304, 308, 81 A.L.R. 300. Except as provided by law it cannot be modified in any essential part without the consent of the parties. City of Des Moines v. Des Moines Water Co., D.C.S.D.Iowa, 218 F. 939, 943."

In the case of Des Moines cited by the court, Judge Van Valkenburgh, then District Judge, said:

"But there is another equally serious objection to this application. This order, and everything in it, was entered by consent. In such cases, in the absence of fraud or mistake, it cannot be modified or varied in any essential part without the consent of the parties to the same. Leitch v. Cumpston, 4 Paige 476; Mains v. Des Moines National Bank, 113 Iowa 395, 85 N.W. 758. While the court, upon the application of either party, may give such further directions as shall become necessary for the purpose of carrying such order or decree into effect according to its spirit and intent, the variation of such an essential element as the time of payment would not fall within such a legitimate exercise of discretion, but would amount to a material alteration of the unambiguous terms of the agreement."

The learned Judge Van Valkenburgh, then quoted with approval from Horning v. Kendrick, 161 Mich. 413, 126 N.W. 650, where the Supreme Court of Michigan said:

"'A decree by consent cannot, in the absence of fraud or mistake, be set aside by rehearing, or on appeal; nor can it be modified without the consent of the parties. Where a decree by consent was entered, under which complainant was to pay a certain sum to defendant on or before a certain date, whereupon defendant was to convey certain property in dispute to the complainant, a supplemental decree entered, extending the time of payment 60 days, was an alteration of the decree; the element of time being the very essence of the agreement, which ripened into a decree. * * * If the court below could extend the time once for a month, it could again extend it for a further period, and thus render the decree less valuable, or

even useless, to the party not consenting to the change. A reduction of the sum to be paid might easily be less injurious to the rights of relator than an extension of the time for payment.'"

In this case the Court of Appeals held: "The consent decree of May 23, 1950, until reversed or vacated in the manner provided by law is conclusive upon the parties." There is no contention that that decree has been reversed or vacated in the manner provided by law. The court thereafter said: "Except as provided by law *it can not be modified in any essential part without the consent of the parties.*"

The decree of May 23, 1950, was modified by the consent order of July 3, 1950. That order provided: "Ordered, that the Trustee, W. E. Moss, be and he is hereby authorized to enter into a contract with the said Intervenor, W. D. May, said contract to embrace all of the provisions as hereinabove set forth; * *." There is attached to this order of July 3, 1950, an agreement, between W. E. Moss, Trustee and the intervenor, W. D. May, in which W. D. May acknowledges that he had executed the contract in conformity with the order of the Court aforesaid (July 3, 1950) and for the uses, purposes and considerations therein set forth and mentioned. This agreement was acknowledged before a Notary Public.

As a part of the consideration for the entry of the order of July 3, 1950, and the execution of the agreement of that date, the Intervenor, W. D. May, entered into the following solemn obligation: (in both the decree and agreement):

"4. It if (is) further expressly agreed between the parties hereto that the said Buyer (Intervenor) will not in any manner for any reason seek nor ask for additional time in which to perform under the terms of this agreement and said order aforesaid, and that upon the failure of the said Buyer to perform under the terms of said order and agree-

ment, within the time stated and without any extension thereof, said failure shall operate as a full and complete forfeiture and the trustee shall be immediately restored to full possession and control of said lands and timber involved herein, and upon the happening of any such forfeiture, the Buyer shall immediately cease all operations of every kind and character upon said lands and shall not thereafter cut or remove any timber therefrom whether said timber shall then be cut or standing."

This order was presented in open court with the intervenor and his counsel present. After reading the order and having been advised that an agreement in keeping with the order had been prepared and would be signed, the court found the terms of the order so harsh that the court directed it be read aloud in open court. After this reading the intervenor was told by the court that before he consented to the entry of that order he should consider, and unless he was prepared to make these payments he was putting himself in a position to lose all moneys he had paid and putting himself beyond the power of the court to help him, if he defaulted in the payments. The intervenor personally and by counsel consented in open court to the entry of the order of July 3, 1950.

■ The court cannot make contracts for the parties, nor relieve them of the burdens of the contract, if the contract proves improvident, or one of the parties finds it convenient to repudiate his obligations under the contract. Nor can the court give relief to a party, who enters into a consent decree, when that consent is knowingly made, and when there is not even a suggestion of fraud, misrepresentation or mistake.

On October 23, 1950, a payment of $21,666.66 became due under the terms of the order and agreement. This payment was not made. Mr. W. R. Alsobrook, to whom the payment was due to be made (Tr. p. 94, Jan. 23, 1951) testified that this payment was not made.

Intervenor does not contend that it was. There were other terms upon which the intervenor also defaulted.

Yet despite his obligation not to ask further time for compliance, the intervenor was before the court on December 28, 1950, asking further time. On that date the court orally granted four days from that date for the intervenor to make payment. That order was actually presented to the court for signature on December 29, 1950, ordered entered nunc pro tunc as of December 28, 1950, and was entered of record as of December 30, 1950. Thus it is clear that on October 23, 1950, the intervenor was in default. The order of December 28, 1950, did not extend the time for payment four days only, but actually extended the time from October 23, 1950.

From this entire record it appears that the intervenor has not only received equitable treatment by the Court and Trustee, but has received treatment far beyond the legal requirements. At a later hearing the court suggested to the Trustee and his counsel that he should like to see the intervenor repaid all sums of money which he had paid under his several agreements and orders of this court. This was agreed to and the intervenor has been repaid and accepted all sums paid by him.

■ This court is bound by the consent decrees and the findings of the Court of Appeals. The extension of time for the intervenor to make payment from October 23, 1950, was a material modification of the order of July 3, 1950, was done without the consent of the Trustee, was beyond the power of the court and void. Horning v. Kendrick, supra; Walling v. Miller, 8 Cir., 138 F.2d 629; Backus v. United States, 59 F.2d 242, 75 Ct.Cl. 69; Manufacturers' Finance Co. v. McKey, Trustee, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 986.

But it is the contention of the intervenor that the Trustee has either waived the requirements of the order of July 3, 1950, or is estopped to insist upon such requirements.

The evidence upon which the intervenor relies to sustain his plea of waiver or estoppel, is, in substance, as follows:

The intervenor testified that he went to Star City, Arkansas, and talked there to the Trustee; that he asked the Trustee if the money was paid into court in compliance with the order of December 28, 1950, would the Trustee deliver the deed. He says the Trustee said he would deliver the deed. He testified further that he paid the interest due on his indebtedness to W. R. Alsobrook, paying it to the Trustee in two payments and that the Trustee accepted the payments and gave him a receipt for it.

It also appears of record that the Trustee accepted the check for $102,679.33, delivered to the Clerk of this court, and the Trustee's acceptance of this check is urged as one of the grounds for waiver and estoppel. The Trustee admits receiving the check into his possession. He says that he did so solely because he believed that the court had directed him to accept it. He said the Clerk of the court called him by 'phone and told him the court had directed him to accept it, and he did so. He says that the interest payments were accepted under the same conditions. He denies that he told the intervenor he would deliver a deed, or that any such statement was made by him.

The affidavit of Mr. Grady Miller, Clerk of this Court was introduced in evidence. The affidavit shows that some time late in the afternoon of December 30, 1950 (being Saturday) he received a call from Mr. A. B. Banks, of Fordyce, Arkansas, in which Mr. Banks stated that this son Richard Banks and some one else were on their way to make a tender into court on behalf of the intervenor. That he, Mr. Miller, came to the Clerk's office about 6:30 or 7:00 p. m., on that day, and about 7:30 p. m., Mr. Richard Banks and the intervenor arrived at the office. They presented to him an officer's check for $102,679.33, together with a form of receipt, as a tender, but he advised them before accepting the check he would make certain of his authority. He then called Mr. D. D. Panich, attorney for the Trustee, and advised him of the tender. Mr. Panich said he did not think the tender complied with the order of the court and he would have nothing to do with the acceptance of it. The Clerk then called the Judge of this Court. He explained the matter to the Judge, and the Judge told him to go ahead and accept the check and turn it over to the Trustee. He then called Mr. Panich, advised him of the court's instructions, and Mr. Panich said: "Of course there was nothing for me to do except carry out the instructions of the court but stated to me that he wanted it understood that the tender was being accepted in conformity to order given me by the Court and was not being accepted for him as attorney for his client W. E. Moss, Trustee." He then accepted the check in accordance with the Judge's instructions. He then called the Trustee by telephone at his home in Star City, advised him what had transpired and told him he was mailing him the check with a copy of the receipt issued to the intervenor. He then called the postoffice to see if the letter could be registered, and Mr. Charlie Hopper, who was on duty that night, said he would accept the letter, and that he delivered it personally to Mr. Hopper to be registered.

The attorney for the Banks interests testified that he went to Star City, to the Trustee's place of business, and there talked to the Trustee. He says he carried with him a deed of Trust executed by the intervenor to A. B. Banks & Company, covering the lands involved here, to secure the indebtedness of the intervenor to A. B. Banks & Company for the $102,679.33 which that company had advanced for the cashier's check which was delivered to the Clerk. He says that he also had a timber deed from the intervenor to Richard Banks covering 3,500,000 feet of timber to be cut by Richard Banks from these same lands. He says that before placing them of record he wanted to know if the deed would be delivered, that he asked the Trustee if he

would deliver the deed, and the Trustee said he would.

The Trustee testified as a witness. He testified that the intervenor came to his place of business, but denies that he told him he would deliver a deed, and denies that such a conversation occurred. He denies that he told the attorney for the Banks interests that he would deliver a deed, or that he was asked if he would do so. He says that he accepted the check into his custody because he believed the court had so directed, and that the interest payments were accepted for the same reason. He says that he kept the check only until he could get in touch with his attorney, that he did not endorse the check, did not take it into his accounts, did not accept it with the intention of accepting it in satisfaction of the price of the lands, and that he returned it to the Clerk of this Court as speedily as he could.

While there is much confusion in the use of the terms "waiver" and "estoppel," there are clear lines of cleavage between them, when carefully considered. It is not contended that the Trustee has expressly waived these requirements, but that the Trustee by his conduct has waived or is estopped to insist upon them.

In the case of Sovereign Camp W. O. W. v. Newsom, 142 Ark. 132, 157, 219 S.W. 759, 768, 14 A.L.R. 903, the learned Chief Justice McCulloch, handed down a dissenting opinion, quoting with approval from the opinion in Sovereign Woodmen of the World v. Putnam, Tex. Civ.App., 206 S.W. 970–972, where the Texas court said:

"'Waiver presupposes a full knowledge of a right existing and an intentional surrender or relinquishment of that right. * * * It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and provisions of a contract; but not so with estoppel.

"'"Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; and estoppel may arise where there is no intention to mislead. * * * Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice, or into an altered position; and estoppel always involves this element. * * * Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy."'" See also Sirmon v. Roberts, 209 Ark. 586, 588, 191 S.W.2d 824, 825; Corp.Jur.Vol. 67, pp. 290–291.

Under the law stated in the cases cited there has been no waiver by the Trustee. But is the Trustee estopped to insist upon the requirements of the order of July 3, 1950? Is he estopped to insist upon the forfeiture therein provided for intervenor's default of October 23, 1950? The court is not impressed by this contention.

In the acceptance of the check for $102,679.33 the Trustee did not act of his own volition, but acted solely on what he believed to be the court's order, without any intention of accepting it otherwise. The same reason holds with reference to his receiving the interest payments. The alleged statements of the Trustee, if true, could not have misled the intervenor to his injury. The Trustee acted promptly in returning the check into court.

As to the statements alleged to have been made to the attorney for the Banks interests, at the time he had the deed of trust and timber deed filed for record, at that time the intervenor had no title to

the lands to mortgage or convey. This the attorney and intervenor knew. They knew the Trustee was objecting to and resisting the sale to the intervenor.

Even if the Court should accept the evidence on behalf of the intervenor, as to the statements the Trustee made, or even if it had not been denied, there is nothing appearing therein which would have misled the intervenor to his hurt, or which could or did cause him to change or alter his position to his disadvantage or to the unconscionable advantage of the Trustee. The intervenor was not so misled and did not so alter or change his position.

It is an axiom of the law that a Trustee is only an arm of the court and can do nothing except as ordered or approved by the court.

"* * * the trustee can, in important matters, act only with approval of the court and he must keep the court fully and frequently advised of his actions as trustee—all of this is because of and emphasizes the fact that he is an officer of the court." Imperial Assurance Co. v. Livingston, 8 Cir., 49 F.2d 745, 748, 74 A.L.R. 1336.

The Trustee is not estopped.

Counsel for plaintiff will prepare findings of fact and conclusions of law, with praecipe for judgment, and submit to the court for entry.